UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

KULWINDER MUTTI

and

KIRPAL MUTTI,

           Plaintiffs,

      v.

RUSHMORE LOAN MANAGEMENT
SERVICES LLC, and WILMINGTON
SAVINGS FUND SOCIETY, FSB, d/b/a
Christiana Trust, not individually but as trustee
for Pretium Mortgage Acquisition Trust,

           Defendants.

No. _____

**COMPLAINT FOR DAMAGES**

**JURY DEMAND**

      Plaintiffs, Kulwinder Mutti and Kirpal Mutti, through counsel, for their complaint against

defendants Rushmore Loan Management Services LLC, and Wilmington Savings Fund Society,

FSB, d/b/a Christiana Trust, not individually but as trustee for Pretium Mortgage Acquisition

Trust, state:

Cawood K. Bebout WSBA #34904
1023 S. 3rd St., Mount Vernon, WA 98273
(360) 419-3196 (office) (360) 336-1962 (fax)

## WHY PLAINTIFFS BRING THIS CASE

1.     Plaintiffs find themselves in dire straits. They face the imminent loss of their home in a wrongfully prosecuted foreclosure case. When Plaintiffs encountered problems paying their mortgage, they contacted their loan servicer and were promised a loan modification if Plaintiffs made three trial plan payments. These payments were made and accepted, but their servicer has failed and refused to honor its agreement to modify their loan.  Instead, the servicer has directed and allowed a foreclosure case to proceed and has thus dual tracked Plaintiffs in violation of the law. Facing the loss of their home, this case is their last resort to obtain relief.

## PARTIES

2.     Plaintiffs, Kulwinder Mutti and Kirpal Mutti ("Plaintiffs"), are the owners of the home at 3230 S. 259th Lane, Kent, Washington 98032 (the "Home").

3.     Plaintiffs have always lived in the Home as their primary, principal residence.

4.     In order to buy the Home, on June 21, 2007, Plaintiffs borrowed money and executed a note in the amount of $275,000.00 payable to Countrywide Home Loans, Inc. (the "Note"). To secure payment of that Note, Plaintiffs executed a Deed of Trust dated June 21, 2007 to Mortgage Electronic Registration Systems, Inc., as nominee for Countrywide Home Loans, Inc. *A true and correct copy of the Note is attached as Exhibit A and a true and correct copy of the Deed of Trust is attached as Exhibit B.*  Both of the foregoing are collectively referred to herein as the "Loan."

5.     Over the course of the last eleven years, ownership and servicing of the Loan transferred on multiple occasions.

Cawood K. Bebout WSBA #34904
1023 S. 3rd St., Mount Vernon, WA 98273
(360) 419-3196 (office) (360) 336-1962 (fax)

6.     Defendant Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as trustee for Pretium Mortgage Acquisition Trust, ("Wilmington"), is the current owner of the Loan.

7.     Defendant Rushmore Loan Management Services LLC ("Rushmore") is the current servicer of the Loan, having acquired servicing as of January 19, 2017.

8.     At all times relevant herein, Rushmore acted and acts as the agent for and partial assignee of Wilmington. Wilmington assigned to Rushmore servicing rights and obligations with respect to the Loan.

### JURISDICTION AND VENUE

9.     Jurisdiction over the claims against Wilmington and Rushmore is conferred by 28 U.S.C. §1331 as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act ("DFA"), and the Real Estate Settlement Procedures Act, 12 U.S.C. §§2601, *et seq.* ("RESPA").

10.     This action is brought to enforce regulations promulgated by the Consumer Financial Protection Bureau ("CFPB") that became effective on January 10, 2014, specifically, 12 C.F.R. §§1024.35, 1024.36, and 1024.41 of Regulation X.

11.     This Court has supplemental jurisdiction to hear all state law statutory and common law claims pursuant to 28 U.S.C. §1367.

12.     Venue is proper in the Western District of Washington and in this division pursuant to 28 U.S.C. §1391(b) in that a substantial part of the events or omissions giving rise to the claims asserted herein occurred, or a substantial part of property that is the subject of the action, is in this District.

Cawood K. Bebout WSBA #34904
1023 S. 3rd St., Mount Vernon, WA 98273
(360) 419-3196 (office) (360) 336-1962 (fax)

## SUMMARY OF CLAIMS

13.    In January 2013, the CFPB issued a number of final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

14.    Specifically, on January 17, 2013, the CFPB issued RESPA (Regulation X) and TILA (Regulation Z) Mortgage Servicing Final Rules, 78 Fed. Reg. 10901 (February 14, 2013) and 78 Fed. Reg. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

15.    The Loan is a "federally related mortgage loan" as defined by 12 C.F.R. §1024.2(b).

16.    Rushmore is subject to Regulations X and Z and does not qualify for an exception for "small servicers," as defined in 12 C.F.R. §1026.41(e)(4), or the exemption for a "qualified lender," as defined in 12 C.F.R. §617.700.

17.    Plaintiffs assert claims for relief against Rushmore for violations of the specific rules set forth in Regulations X, as set forth, *infra*.

18.    Plaintiffs assert a private right of action under RESPA pursuant to 12 U.S.C. §2605(f) and any such action provides for remedies including actual damages, costs, statutory damages, and attorneys' fees.

19.    Plaintiffs also assert a common law claim for breach of contract and violation of the Washington Consumer Protection Act ("CPA"), RCW 19.86.

## THE LOAN AND LOSS MITIGATION

20.    In 2015, Plaintiffs encountered financial difficulties and fell behind in their payments on the Loan.

21.    In order to save their Home and pay the Loan, Plaintiffs sought loss mitigation from the servicer of the Loan at that time, Residential Credit Solutions, Inc. ("RCS").

Cawood K. Bebout WSBA #34904
1023 S. 3rd St., Mount Vernon, WA 98273
(360) 419-3196 (office) (360) 336-1962 (fax)

22.     On or about December 21, 2015, RCS sent a Trial Period Plan (the "TPP") to Plaintiffs. *A true and correct copy of the TPP is attached as Exhibit C.*

23.      Pursuant to the TPP, the Plaintiffs were to make three (3) monthly payments each in the amount of $1,555.63 for the months of February 2016, March 2016 and April 2016.

24.     Pursuant to the terms of the TPP, upon the Plaintiffs' acceptance of the TPP and timely remittance of payments, RCS was to calculate and offer a permanent loan modification to the Plaintiffs.

25.     The Plaintiffs accepted the TPP and remitted the requisite three payments in a timely manner pursuant to the terms of the TPP. *Proof of the Plaintiffs' payments pursuant to the TPP is attached as Exhibit D.*

26.     Servicing of the Loan transferred from RCS to Ditech Financial, LLC ("Ditech") on or about February 22, 2016.

27.     While the Borrowers continued to remit the TPP payments to RCS, RCS forwarded such payments to Ditech, and Ditech received such payments in a timely manner. *A copy of the transaction history of the Loan from Ditech evidencing the payments is attached as Exhibit E.*

28.     Rather than apply the payments in accordance with the TPP, Ditech applied those payments to the Loan rather than the effective TPP, and then claimed that the Loan was delinquent. *A copy of a mortgage statement from Ditech evidencing such is attached as Exhibit F.*

29.     Ditech did not honor the TPP throughout its servicing of the Loan and transferred the Loan to Rushmore in a default status.

30.     Despite the Plaintiffs' complete compliance with and satisfaction of the terms of the TPP, neither RCS, nor any subsequent servicer, including Rushmore, ever abided by the terms of the

Cawood K. Bebout WSBA #34904
1023 S. 3rd St., Mount Vernon, WA 98273
(360) 419-3196 (office) (360) 336-1962 (fax)

TPP and offered the Plaintiffs a permanent loan modification consistent with the terms of the TPP.

31.     Rather than adhere to the terms of the TPP and offer a permanent loan modification for which the owner or investor of the Loan had approved Plaintiffs' eligibility, RCS, Ditech, and Rushmore improperly applied the payments as they saw fit to keep the Plaintiffs in a delinquent and default status.

32.     In order to save their Home, the Plaintiffs were forced to seek the assistance of counsel to seek appropriate redress.

## PLAINTIFFS' ATTEMPTS TO RESOLVE LOAN ERRORS

33.     By letter dated March 27, 2018, Plaintiffs, through counsel, sent correspondence to Rushmore that was captioned, "Notice of Error" ("NOE"), pursuant to 12 C.F.R. §1024.35(b)(11) for Rushmore's failure to honor the terms of the TPP and implement a permanent modification; and pursuant to 12 C.F.R. § 1024.35(b)(2) for Rushmore's failure to properly apply accepted payments to principal, interest, escrow, or other charges in accordance with the terms of the Loan and applicable law. *A true and correct copy of the NOE sent to Rushmore is attached as Exhibit G.*

34.     By and through the NOE, Plaintiffs brought the servicing errors detailed above to the attention of Rushmore and requested that Rushmore correct those errors.

35.     Rushmore received the NOE on April 2, 2018. *See tracking information attached as Exhibit H.*

36.     By letter dated April 9, 2018, Rushmore acknowledged receipt of the NOE, offered its appreciation for bringing the matter to the attention of Rushmore, and stated that "we take all inquiries from our customers very seriously." Further, Rushmore indicated in its letter that the

Cawood K. Bebout WSBA #34904
1023 S. 3rd St., Mount Vernon, WA 98273
(360) 419-3196 (office) (360) 336-1962 (fax)

matter is "currently under review." *A true and correct copy of Rushmore's April 9, 2018 letter is attached as Exhibit I.*

37.     By letter dated May 14, 2018, Rushmore sent Plaintiffs' counsel a response to the NOE (the "NOE Response"). *A true and correct copy of the NOE Response is attached as Exhibit J.*

38.     Rather than respond to the errors raised by Plaintiffs in the NOE, Rushmore's NOE Response addressed a modification application submitted by the Plaintiffs in late 2017 - in other words, Rushmore did not address the issue presented by the NOE.

39.     It is apparent from Rushmore's NOE Response that it failed to investigate the specific errors raised by the NOE, namely, that the Loan had been modified by the TPP and the prior and present servicer were failing to honor the TPP by offering Plaintiffs a permanent loan modification.

40.     The fact that Plaintiffs sought to mitigate their damages by pursuing a modification in 2017 did not obviate the requirement that Rushmore investigate the NOE to determine if an error had occurred with respect to the TPP and the failure to permanently modify the Loan.

## DAMAGE TO PLAINTIFFS

41.     Plaintiffs reached out to the servicer of their Loan for help when they encountered financial difficulty. They submitted required information, obtained a trial modification evidenced by the TPP, and thereafter dutifully tendered all required payments. They were promised that if they performed the TPP, the Loan would be permanently modified. In short, they honored their agreement; defendants did not.

42.     The impact of this conduct on Plaintiffs has been severe: emotionally, physically and financially.

Cawood K. Bebout WSBA #34904
1023 S. 3rd St., Mount Vernon, WA 98273
(360) 419-3196 (office) (360) 336-1962 (fax)

43.     Rushmore's servicing errors and indifference have had a major impact on Plaintiffs. They are consumed by worry over the status of the Loan.

44.     Plaintiffs have endured severe emotional distress proximately caused by the conduct of Rushmore. This stress is driven by the daily ongoing fear that they might lose the Home in foreclosure and be forced to leave the Home. This stress and fear has resulted in loss of sleep, anxiety, depression, embarrassment, and other significant and persistent emotional distress and which promised dire medical consequences.

45.     The actions of Rushmore have further caused Plaintiffs to unnecessarily remain in default or otherwise in delinquent status on the Loan for a substantially longer time than they would have if Rushmore had acted appropriately and with reasonable diligence in addressing the errors alleged, thereby causing continuing damage to their credit and an unnecessary delay to the rehabilitation of their credit.

46.     The actions of Rushmore have caused Plaintiffs to incur actual damages including, but not limited to, costs, including postage and filing fees, and attorneys' fees to bring errors to Rushmore's attention and to bring this action.

47.     Throughout this entire ordeal, Plaintiffs have merely wanted to save their Home. They asked Rushmore to just fix the problems with their Loan by honoring the TPP.

48.     Rushmore has engaged in a pattern and practice of mistreating mortgage loan borrowers and violating provisions of the Real Estate Settlement Procedure Act, 12 U.S.C. §§ 2605, 2617, and the regulations promulgated thereunder at Regulation X, 12 C.F.R. part 1024 ("RESPA"). At the time of the filing of this Complaint, at least Five Hundred Sixty (560) consumer complaints have been lodged against Rushmore nationally concerning the issue identified on the CFPB's consumer complaint database as "loan modification, collection, foreclosure" related to

Cawood K. Bebout WSBA #34904
1023 S. 3rd St., Mount Vernon, WA 98273
(360) 419-3196 (office) (360) 336-1962 (fax)

mortgage products. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database, which is located at: http://www.consumerfinance.gov /complaintdatabase/.

49.     At all relevant times, Rushmore acted within the scope of its authority as the agent for Wilmington.

### COUNT ONE: AGAINST WILMINGTON
### [Breach of Contract]

50.     Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 49 in their entirety, as if fully rewritten herein.

51.     The Loan, as modified pursuant to the TPP (*Exhibit C*), is an enforceable contract between Plaintiffs and Wilmington, as owner of the Loan.

52.     Wilmington and Rushmore, as the partial assignee of the contract for servicing, breached the contract by failing to honor its terms, failing to accept and apply payments made by Plaintiffs in accordance with the terms of the contract, and by failing and refusing to permanently modify the Loan in accordance with the TPP.

53.     Plaintiffs fully performed their obligations pursuant to the contract by making each and every payment of amounts properly due and by otherwise meeting each and every obligation imposed by the parties' contract.

54.     Wilmington and Rushmore have breached the Loan contract and TPP.  The breach is one of bad faith as demonstrated by the allegations above. Rushmore failed to properly process and honor the terms of the TPP, which Plaintiffs accepted and performed in good faith.

55.     Both Wilmington and Rushmore owed Plaintiffs a fiduciary duty to handle the loan modification and the payments made by Plaintiffs properly and in accordance with the TPP.  Each of them breached its duty to Plaintiffs by failing to accept and apply payments made by Plaintiffs in accordance with the terms of the TPP.

Cawood K. Bebout WSBA #34904
1023 S. 3rd St., Mount Vernon, WA 98273
(360) 419-3196 (office) (360) 336-1962 (fax)

56.     Plaintiffs continue to suffer economic and noneconomic damages as a result of the breach, including continued credit diminution, distress, fear of losing their home, and mental anguish.

57.     Plaintiffs are entitled to actual damages and their reasonable attorneys' fees and costs jointly and severally against Wilmington and Rushmore.

**COUNT TWO: AGAINST RUSHMORE**
**[Failure to Perform a Reasonable Investigation of and Properly**
**Respond to NOE that Alleged Four Separate Servicing Errors]**

58.     Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 49, and 51 through 57, in their entirety, as if fully rewritten herein.

59.     12 C.F.R. § 1024.35(a) provides:

A servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred.

60.     Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower."

61.     12 C.F.R. § 1024.35(e)(1) provides that a servicer must respond to a notice of error by either "[c]orrecting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance" or

[c]onducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

Cawood K. Bebout WSBA #34904
1023 S. 3rd St., Mount Vernon, WA 98273
(360) 419-3196 (office) (360) 336-1962 (fax)

62. Plaintiffs submitted the NOE to Rushmore and raised four errors: one for Rushmore's actions in failing to implement, onboard, or otherwise offer and adhere to the permanent loan modification to which Plaintiffs were entitled under the TPP [12 C.F.R. § 1024.35(b)(11)]; and three errors related to Rushmore's failure to correct and apply each of the three accepted payments made by Plaintiffs pursuant to the TPP [12 C.F.R. § 1024.35(b)(2)].

63. The NOE meets the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a). It was sent to Rushmore at its designated address for the receipt of such notices, was received and acknowledged.

64. Rushmore did not correct the errors raised by the NOE.

65. Rushmore failed to perform a reasonable investigation of the errors alleged as evidenced by the NOE Response which fails to address any error raised.

66. Rushmore's actions have caused Plaintiffs damage, as discussed, *supra*.

67. As a result of Rushmore's actions, Rushmore is liable to Plaintiffs for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT THREE: AGAINST RUSHMORE AND WILMINGTON
### [Violation of CPA]

68. Plaintiffs restate and incorporate all of their statements and allegations contained in paragraphs 1 through 49, 51 through 57, and 59 through 67, in their entirety, as if fully rewritten herein.

69. The conduct as detailed herein is unfair and deceptive.

70. Plaintiffs were falsely led to believe that if they accepted the TPP, their Loan would be permanently modified as the servicer of the Loan represented to them.

Cawood K. Bebout WSBA #34904
1023 S. 3rd St., Mount Vernon, WA 98273
(360) 419-3196 (office) (360) 336-1962 (fax)

71.     It is also unfair for the Rushmore, as the current servicer of the Loan, and Wilmington, as the current owner of the Loan, to fail to correct errors raised and to improperly apply payments made by Plaintiffs.

72.     The conduct as detailed herein occurred in trade or commerce, namely the servicing and collection of a consumer debt represented by the Loan.

73.     The conduct as detailed herein affects the public interest in that it is in the public's interest to hold servicers to their contractual and statutory obligations when servicing residential mortgages and in collection of debt.

74.     The Plaintiffs have suffered injury in that they have been deprived the benefit of their bargain in accepting the TPP, have had payments applied improperly, and have had to remain in an improper state of default.

75.     Wilmington is liable to Plaintiffs for the conduct of its agents, including Rushmore, in servicing the Loan.

## RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter an order granting Judgment in favor of Plaintiffs and against Defendants Wilmington and Rushmore for the following:

A.     For Plaintiffs' actual damages, all costs and reasonable attorneys' fees, against Defendants Wilmington and Rushmore, jointly and severally, as applicable, as to all allegations contained in Counts I through III;

B.     For statutory damages of Two Thousand Dollars ($2,000.00) per Plaintiff against Defendant Rushmore for each and every violation contained in Count II;

Cawood K. Bebout WSBA #34904
1023 S. 3rd St., Mount Vernon, WA 98273
(360) 419-3196 (office) (360) 336-1962 (fax)

C.     For a favorable exercise of the Court's discretion increasing the award of Plaintiffs'

actual damages up to an amount not to exceed three times the actual damages or $25,000,

whichever is lesser, pursuant to RCW 19.86.090; and

D.     For all other relief this Court may deem just and proper.

Respectfully submitted this 15th day of June, 2018, by:

s/Cawood K. Bebout                                    Rusty A. Payton, *pro hac vice admission*
Cawood K. Bebout, WSBA No. 34904          *forthcoming*

LAW OFFICE OF CAWOOD K. BEBOUT       DannLaw
1023 S 3rd St                                                  20 North Clark Street, Suite 3300
Mount Vernon WA 98273                              Chicago IL 60602
Telephone:     360.419.3196                            Telephone:     312.702.1000
Facsimile:      360.336.1962                            Facsimile:      312.702.1000
bebout@fidalgo.net                                         notices@dannlaw.com
                                                                      payton@dannlaw.com

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand trial by

jury in this action of all issues so triable.

Respectfully submitted this 15th day of June, 2018, by:

s/Cawood K. Bebout                                    Rusty A. Payton, *pro hac vice admission*
Cawood K. Bebout, WSBA No. 34904          *forthcoming*

LAW OFFICE OF CAWOOD K. BEBOUT       DannLaw
1023 S 3rd St                                                  20 North Clark Street, Suite 3300
Mount Vernon WA 98273                              Chicago IL 60602
Telephone:     360.419.3196                            Telephone:     312.702.1000
Facsimile:      360.336.1962                            Facsimile:      312.702.1000
bebout@fidalgo.net                                         notices@dannlaw.com
                                                                      payton@dannlaw.com

Cawood K. Bebout WSBA #34904
1023 S. 3rd St., Mount Vernon, WA 98273
(360) 419-3196 (office) (360) 336-1962 (fax)

# EXHIBIT A

Adjustable Rate Note

June 21, 2007

Cawood K. Bebout WSBA #34904
1023 S. 3rd St., Mount Vernon, WA 98273
Office (360) 419-3196; Fax (360) 336-1962
bebout@fidalgo.net

LOAN #: ~~REDACTED~~

# InterestFirst™ ADJUSTABLE RATE NOTE
### (One-Year LIBOR Index (As Published In *The Wall Street Journal*)
### Rate Caps - 10 Year Interest Only Period)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR A CHANGE IN MY FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE AND FOR CHANGES IN MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

| JUNE 21, 2007 | OLYMPIA | WASHINGTON |
|---|---|---|
| [Date] | [City] | [State] |

3230 S 259TH LN, KENT, WA 98032-9758
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 275,000.00 (this amount is called "Principal"), plus interest, to the order of Lender. Lender is COUNTRYWIDE HOME LOANS, INC.

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.875 %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

(A) Time and Place of Payments

I will make a payment on the first day of every month, beginning on AUGUST 01, 2007 . Before the First Principal and Interest Payment Due Date as described in Section 4 of this Note, my payment will consist only of the interest due on the unpaid principal balance of this Note. Thereafter, I will pay principal and interest by making a payment every month as provided below.

---

MULTISTATE InterestFirst ADJUSTABLE RATE NOTE - ONE-YEAR LIBOR INDEX - 10 Yr. Interest Only Period - Single Family - Fannie Mae Uniform Instrument

-197N (0506).01   CHL (07/06)(d)

Page 1 of 5
VMP Mortgage Solutions, Inc.

Form 3535 6/05

* 2 3 9 9 1 *

610   169994817   PCF 001   001

I will make my monthly payments of principal and interest beginning on the First Principal and Interest Payment Due Date as described in Section 4 of this Note. I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date, and if the payment includes both principal and interest, it will be applied to interest before Principal. If, on JULY 01, 2037 , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at

P.O. Box 10219, Van Nuys, CA 91410-0219

or at a different place if required by the Note Holder.

(B) Amount of My Initial Monthly Payments

Each of my initial monthly payments will be in the amount of U.S. $ 1,346.35 until the first Change Date. After the first Change Date, my monthly payment will be in an amount sufficient to pay accrued interest, at the rate determined as described in Section 4 of this Note until the First Principal and Interest Payment Due Date. On that date and thereafter, my monthly payment will be in an amount sufficient to repay the principal and interest at the rate determined as described in Section 4 of this Note in substantially equal installments by the Maturity Date. The Note Holder will notify me prior to the date of changes in monthly payment.

(C) Monthly Payment Changes

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 or 5 of this Note.

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

(A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of JULY, 2012 , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

(B) The Index

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

(C) Calculation of Changes

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO & ONE-QUARTER percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of my monthly payment. For payment adjustments occurring before the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay all accrued interest each month on the unpaid principal balance at the new interest rate. If I make a voluntary payment of principal before the First Principal and Interest Payment Due Date, my payment amount for subsequent payments will be reduced to the amount necessary to repay all accrued interest on the reduced principal balance at the current interest rate. For payment adjustments occurring on or after the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay unpaid principal and interest that I am expected to owe in full on the Maturity Date at the current interest rate in substantially equal payments.

(D) Limits on Interest Rate Changes

The interest rate I am required to pay at the first Change Date will not be greater than 10.875 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 10.875 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of such change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**(G) Date of First Principal and Interest Payment**

The date of my first payment consisting of both principal and interest on this Note (the "First Principal and Interest Payment Due Date") shall be that date which is the 10th anniversary date of the first payment due date, as reflected in Section 3(A) of the Note.

**5. BORROWER'S RIGHT TO PREPAY**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date of my monthly payment unless the Note Holder agrees in writing to those changes. If the partial Prepayment is made during the period when my monthly payments consist only of interest, the amount of the monthly payment will decrease for the remainder of the term when my payments consist only of interest. If the partial Prepayment is made during the period when my payments consist of principal and interest, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

**6. LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

**7. BORROWER'S FAILURE TO PAY AS REQUIRED**

**(A) Late Charges for Overdue Payments**

If the Note Holder has not received the full amount of any monthly payment by the end of    FIFTEEN    calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000 %    of my overdue payment of interest, during the period when my payment is interest only, and of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

**(B) Default**

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

**(C) Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D) No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E) Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to

be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 8. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 9. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 10. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

(A) Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument shall read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

(B) When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section 4 above, Uniform Covenant 18 of the Security Instrument described in Section 11(A) above shall then cease to be in effect, and Uniform Covenant 18 of the Security Instrument shall instead read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

Kulwinder Kaur _____ (Seal)
KULWINDER MUTTI -Borrower

PAY TO THE ORDER OF

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC

_____ (Seal)
-Borrower

BY Michele Sjolander

_____ (Seal)
-Borrower

MICHELE SJOLANDER
EXECUTIVE VICE PRESIDENT

_____ (Seal)
-Borrower
[Sign Original Only]

VMP-197N (0006).01    CHL (07/05)    Page 5 of 5    Form 3535 1/05

# EXHIBIT B

Deed of Trust

Cawood K. Bebout WSBA #34904
1023 S. 3rd St., Mount Vernon, WA 98273
Office (360) 419-3196; Fax (360) 336-1962
bebout@fidalgo.net

After Recording Return To:
COUNTRYWIDE HOME LOANS, INC.
MS SV-79 DOCUMENT PROCESSING
P.O.Box 10423
Van Nuys, CA 91410-0423



Assessor's Parcel or Account Number: REDACTE
Abbreviated Legal Description: A portion of the Northwest Quarter
PER TITLE REPORT of the Northwest Quarter of Section
27-22-04
[Include lot, block and plat or section, township and range]
Full legal description located on page 12

Trustee:
LS TITLE OF WASHINGTON

Additional Grantees located on page

---------------------------------------- [Space Above This Line For Recording Data] ----------------------------------------

REDA                                                          REDACTED
[Escrow/Closing #]                                            [Doc ID #]

# DEED OF TRUST

MIN 1000157-0008129062-5

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3,
11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in
Section 16.

(A) "Security Instrument" means this document, which is dated  JUNE 21, 2007                , together
with all Riders to this document.
(B) "Borrower" is
KULWINDER MUTTI, AND KIRPAL SINGH MUTTI WIFE AND HUSBAND



Borrower is the trustor under this Security Instrument.
(C) "Lender" is
COUNTRYWIDE HOME LOANS, INC.
Lender is a CORPORATION
organized and existing under the laws of NEW YORK

WASHINGTON-Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT WITH MERS

Page 1 of 11

VMP -6A(WA) (0012).01    CHL (08/05)(d)    VMP Mortgage Solutions, Inc. (800)521-7291        Form 3048 1/01
CONV/VA


* 2 3 9 9 1 *


* 1 6 9 9 9 4 8 1 7 0 0 0 0 0 2 0 0 6 A *

Lender's address is
4500 Park Granada MSN# SVB-314, Calabasas, CA 91302-1613
(D) "Trustee" is
LS TITLE OF WASHINGTON
2707 COLBY AVENUE, SUITE 118, EVERETT, WA 98201
(E) "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated JUNE 21, 2007 . The Note states that Borrower owes Lender
TWO HUNDRED SEVENTY FIVE THOUSAND and 00/100

Dollars (U.S. $ 275,000.00 ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than JULY 01, 2037 .
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| [X] Adjustable Rate Rider | [ ] Condominium Rider | [ ] Second Home Rider |
| [ ] Balloon Rider | [ ] Planned Unit Development Rider | [ ] 1-4 Family Rider |
| [ ] VA Rider | [ ] Biweekly Payment Rider | [ ] Other(s) [specify] |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

|  COUNTY | of | KING | : |
| [Type of Recording Jurisdiction] | | [Name of Recording Jurisdiction] | |

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

which currently has the address of

3230 S 259TH LN, KENT

[Street/City]

Washington 98032-9758 ("Property Address"):

[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the

late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees, and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent

the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous

Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property ·(including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property at public auction at a date not less than 120 days in the future. The notice shall further inform Borrower of the right to reinstate after acceleration, the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale, and any other matters required to be included in the notice by Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property for a period or periods permitted by Applicable Law by public announcement at the time and place fixed in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs and the Trustee's fee for preparing the reconveyance.

**24. Substitute Trustee.** In accordance with Applicable Law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Use of Property.** The Property is not used principally for agricultural purposes.

**26. Attorneys' Fees.** Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument. The term "attorneys' fees," whenever used in this Security Instrument, shall include without limitation attorneys' fees incurred by Lender in any bankruptcy proceeding or on appeal.

ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_Kulwinder Kaur_ (Seal)
KULWINDER MUTTI -Borrower

_____ (Seal)
KIRPAL SINGH MUTTI -Borrower

_____ (Seal)
-Borrower

_____ (Seal)
-Borrower

STATE OF WASHINGTON
County of _Thurston_ } ss:
On this day personally appeared before me _Kulwinder Mutti_
_and Kirpal Singh mutti_
_____
_____
_____
to me known to be the individual(s) described in and who executed the within and foregoing instrument, and acknowledged that he/she/they signed the same as his/her/their free and voluntary act and deed, for the uses and purposes therein mentioned.
GIVEN under my hand and official seal this _____ day of _June 2007_.

_____
Notary Public in and for the State of Washington, residing at
_Lacey_
My Appointment Expires on _07-17-08_

Prepared by: LAURA LEENKNECHT

## COUNTRYWIDE HOME LOANS, INC.

DATE:          06/21/2007
CASE #:
DOC ID #: REDACTED
BORROWER: KULWINDER MUTTI
PROPERTY ADDRESS: 3230 S 259TH LN
                 KENT, WA 98032-9758

Branch #: 0001208
1520 COOPER POINT RD SW STE350
OLYMPIA, WA 98502
Phone: (360)709-2500
Br Fax No.: (360)709-9033

## LEGAL DESCRIPTION EXHIBIT A

THAT PORTION OF THE WEST HALF OF THE WEST HALF OF THE NORTHWEST QUARTER OF THE NORTHWEST QUARTER OF SECTION 27, TOWNSHIP 22 NORTH, RANGE 4 EAST, WILLAMETTE MERIDIAN, IN KING COUNTY, WASHINGTON, DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE SOUTH LINE OF SEACOMA PARK NO. 2, ACCORDING TO THE PLAT THEREOF, RECORDED IN VOLUME 66 OF PLATS, PAGE 11, IN KING COUNTY, WASHINGTON, WHICH IS SOUTH 89°02'52" EAST 190 FEET FROM THE SOUTHWEST CORNER OF SAID PLAT;
THENCE SOUTH 0°59'12" WEST PARALLEL WITH THE WEST LINE OF SAID SECTION A DISTANCE OF 167.65 FEET;
THENCE SOUTH 89°02'52" EAST 141.22 FEET TO THE EAST LINE OF SAID SUBDIVISION;

THENCE NORTH 0°59'00" EAST ALONG THE EAST LINE OF 167.65 FEET TO THE SOUTHEAST CORNER OF SAID PLAT;
THENCE NORTH 89°02'52" WEST 141.22 FEET TO THE POINT OF BEGINNING;

TOGETHER WITH A NON-EXCLUSIVE EASEMENT FOR INGRESS AND EGRESS OVER THAT PORTION OF THE EAST 30 FEET OF THE WEST 220 FEET OF SAID SUBDIVISION, LYING SOUTH OF THE ABOVE DESCRIBED PROPERTY AND NORTH OF SOUTH 259TH PLACE.

FHA/VA/CONV
Legal Description Exhibit A
2C404-XX (04/03)(d)





LOAN #: <span style="background-color:red;color:white">REDACTED</span>

# FIXED/ADJUSTABLE RATE RIDER

(LIBOR One-Year Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS FIXED/ADJUSTABLE RATE RIDER is made this TWENTY-FIRST day of JUNE, 2007 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Fixed/Adjustable Rate Note (the "Note") to COUNTRYWIDE HOME LOANS, INC.

("Lender") of the same date and covering the property described in the Security Instrument and located at:

3230 S 259TH LN
KENT, WA 98032-9758
[Property Address]

**THE NOTE PROVIDES FOR A CHANGE IN BORROWER'S FIXED INTEREST RATE TO AN ADJUSTABLE INTEREST RATE. THE NOTE LIMITS THE AMOUNT BORROWER'S ADJUSTABLE INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

## A. ADJUSTABLE RATE AND MONTHLY PAYMENT CHANGES

The Note provides for an initial fixed interest rate of 5.875 %. The Note also provides for a change in the initial fixed rate to an adjustable interest rate, as follows:

## 4. ADJUSTABLE INTEREST RATE AND MONTHLY PAYMENT CHANGES

### (A) Change Dates

The initial fixed interest rate I will pay will change to an adjustable interest rate on the first day of JULY, 2012 , and the adjustable interest rate I will pay may change on that day every 12th month thereafter. The date on which my initial fixed interest rate changes to an adjustable interest rate, and each date on which my adjustable interest rate could change, is called a "Change Date."

• FIXED/ARM Rider
Interest First/Only LIBOR One-Year Index
1E460-US (10/05)(d)          Page 1 of 5



\* 2 3 9 9 1 \*



\* 1 6 9 9 9 4 8 1 7 0 0 0 0 0 1 E 4 6 0 \*



**(B) The Index**

Beginning with the first Change Date, my adjustable interest rate will be based on an Index. The "Index" is the average of interbank offered rates for one-year U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index that is based upon comparable information. The Note Holder will give me notice of this choice.

**(C) Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO & ONE-QUART percentage points ( 2.250 %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment. For payment adjustments occurring before the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay all accrued interest each month on the unpaid principal at the new interest rate. If I make a voluntary payment of principal before the First Principal and Interest Payment Due Date, my payment amount for subsequent payments will be reduced to the amount necessary to repay all accrued interest on the reduced principal balance at the current interest rate. For payment adjustments occurring on or after the First Principal and Interest Payment Due Date, the amount of my monthly payment will be sufficient to repay unpaid principal and interest that I am expected to owe in full on the Maturity Date at the current interest rate in substantially equal payments.

**(D) Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than 10.875 % or less than 2.250 %. Thereafter, my adjustable interest rate will never be increased or decreased on any single Change Date by more than two percentage points from the rate of interest I have been paying for the preceding 12 months. My interest rate will never be greater than 10.875 %.

**(E) Effective Date of Changes**

My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**

Before the effective date of any change in my interest rate and/or monthly payment, the Note Holder will deliver or mail to me a notice of any change. The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

1. Until my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument shall read as follows:

• FIXED/ARM Rider
Interest First/Only LIBOR One-Year Index
1E460-US (10/05)                    Page 2 of 5

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

2. When my initial fixed interest rate changes to an adjustable interest rate under the terms stated in Section A above, Uniform Covenant 18 of the Security Instrument described in Section B.1 above shall then cease to be in effect, and the provisions of Uniform Covenant 18 of the Security Instrument shall be amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

# EXHIBIT C

Trial Period Plan

December 21, 2015

Cawood K. Bebout WSBA #34904
1023 S. 3rd St., Mount Vernon, WA 98273
Office (360) 419-3196; Fax (360) 336-1962
bebout@fidalgo.net



**RCS**

Residential Credit Solutions, Inc
P.O Box 163229, Fort Worth, Texas 78161-3229

Date:     December 21, 2015

Borrower(s):      KULWINDER MUTTI
Mailing Address:  C O LEEN AND O SULLIVAN 520 EAST DENNY WAY  SEATTLE, WA  98122
Property Address: 3230 S 259TH LN KENT, WA 98032

RE: Trial Period Plan
    Loan Number:  REDACT

Dear KULWINDER MUTTI ,

Attached is the Trial Period Plan that was granted in response to your request for assistance with your loan.

Submitted herewith, you will find the original unexecuted Trial Period Plan. We request that you return to us, if via US Mail, two (2) duplicate original Trial Period Plan(s), each signed and dated. If there are notary provisions at the end or attached, you must sign both copies before a notary public and return the notarized copies to us. Make sure to keep a copy for your records.

We must receive your Trial Period Plan (s), and the $1,555.63 in certified funds or you may submit your first Trial Period Plan payment to RCS, no later than 02/01/2016 or this transaction will be null and void.

Please submit the payment, any other documentation, and/or an executed copy of the Will and/or Heirship, or any other documents concerning the rightful owner of the property, directly to our office at Residential Credit Solutions, Inc. (RCS), 4708 Mercantile Dr., Fort Worth, TX 76137, no later than 02/01/2016 or this transaction will be null and void.

If you prefer to bank wire the funds, please have wired to the following bank account:

    Texas Capital Bank
    2350 Lakeside Blvd Ste. 800
    Richardson, TX 75082
    Routing: 111017979
    Account: 2111019051

*Residential Credit Solutions, INC*
*4708 Mercantile Dr.,*
*Fort Worth, TX 76137*

## Modification Plan
## Trial Period Payment Coupon



Below are your Trial Period Payment Coupons. Please be aware that we must receive your first Trial Period Payment no later than the last business day of the month indicated on your Trial Period Plan Notice or you will not be eligible for the current offer.

All other Trial Period Payments must also be received by the dates indicated on the coupons.

**ACH and Flex Pay Customers;** If you are currently on ACH or Flex Pay through the Mortgage Service Center, you must still mail your trial period payments using the coupons below. Your ACH or Flex Pay will be stopped when your first trial payment is received. If you are approved for a permanent Modification, you will be sent a re-activation form to return with your permanent Modification agreement so that these services can begin again with your permanent Modification.

**Paperless Customers:** If you currently receive paperless statements through the Web site, please be aware that you will continue to receive alerts about payment application. However, the alerts will show your payments applied to a suspense account during the Trial Period.

**SpeedPay:** If you are not in later stages of delinquency, you may also use SpeedPay through any of our phone representatives for free during the Trial Period. To see if you are eligible to make your Trial Period Payments through our SpeedPay service, please call one of our representatives at 800-737-1192.

**Personal e-Billing Services:** If you use third-party billing services (such as your bank s billing service or Checkfree) to pay your mortgage, please be certain to contact them to avoid sending in your regular mortgage payments while you are making your trial payments.

Please utilize the Modification Trial Period Payment Coupons below when mailing your monthly Trial Period Payment.

**If your Trial Period Plan Notice indicates that you might have an escrow shortage:** If you would like to send in the full amount of the escrow shortage shown in your Trial Period Plan Notice, please write a separate check for that amount and indicate in the check s memo field that the payment is for the PROJECTED ESCROW SHORTAGE so that we apply it to your escrow account during the Trial Period instead of recording it as a regular Trial Payment.



Residential Credit Solutions, Inc
P O Box 163229, Fort Worth, Texas 76161-3229

NOTICE: For Hawaii residents only, if you believe your loss mitigation option request has been wrongly denied, you may file a complaint with the state division of financial institutions at division telephone (808) 586-2820 or dfi@dcca.hawaii.gov.

Residential Credit Solutions, Inc. is a debt collector attempting to collect a debt. Any information obtained will be used for that purpose.

Residential Credit Solutions, Inc.    NMLS No. 1514
P.O. Box 163229, Fort Worth, TX 76161-3229
Website: www.residentialcredit.com
Email: ResponseTeam@residentialcredit.com



**RCS**

Residential Credit Solutions, Inc
P O Box 163229, Fort Worth, Texas 76161-3229

Date:    December 21, 2015

RECEIVED

DEC 28 2015

LEEN & O SULLIVAN, PLLC

Borrower(s):       KULWINDER MUTTI
Mailing Address:   C O LEEN AND O SULLIVAN 520 EAST DENNY WAY  SEATTLE, WA 98122
Property Address:  3230 S 259TH LN KENT, WA 98032

RE:  Trial Period Plan
     Loan Number: REDACT

Dear KULWINDER MUTTI ,

Attached is the Trial Period Plan that was granted in response to your request for assistance with your loan.

Submitted herewith, you will find the original unexecuted Trial Period Plan. We request that you return to us, if via US Mail, two (2) duplicate original Trial Period Plan(s), each signed and dated. If there are notary provisions at the end or attached, you must sign both copies before a notary public and return the notarized copies to us. Make sure to keep a copy for your records.

We must receive your Trial Period Plan(s), and the $1,555.63 in certified funds or you may submit your first Trial Period Plan payment to RCS, no later than 02/01/2016 or this transaction will be null and void.

Please submit the payment, any other documentation, and/ or an executed copy of the Will and/ or Heirship, or any other documents concerning the rightful owner of the property, directly to our office at Residential Credit Solutions, Inc. (RCS), 4708 Mercantile Dr., Fort Worth, TX 76137, no later than 02/01/2016 or this transaction will be null and void.

If you prefer to bank wire the funds, please have wired to the following bank account:

Texas Capital Bank
2350 Lakeside Blvd Ste. 800
Richardson, TX 75082
Routing: 111017979
Account: 2111 019051

Scanned_____

If a faxed copy of the agreement is received, due to time constraints, the two (2) duplicate original Trial Period Plan(s), each signed, dated and notarized (if notary provisions at end or attached) must be received in our office within 24 hours, no later than 02/01/2016.

The physical address for overnight mailing is:

Residential Credit Solutions, Inc. (RCS)
4708 Mercantile Dr.
Fort Worth, TX 76137

If you should have any questions and need to speak with someone at RCS, please feel free to contact us at our toll free number at 800-737-1192. Our Customer Service Representatives are available Monday through Thursday between the hours of 8:00 AM and 7:00 PM, Friday between the hours of 8:00 AM and 5:00 PM Central Standard Time. If you are unable to resolve the issue verbally with our Customer Service Representatives, and you proclaim there is an error on the above- mentioned loan or you have an information request, you may submit an Error Resolution / Information Request to Residential Credit Solutions,Inc. Customer Relations at P.O. BOX 163889 Fort Worth, TX 76161-3289. As an alternative, you may submit requests via facsimile at 888-775-7250. Please make sure to include the loan number and property owner s name, along with a clear statement of your request for review.

If you currently are under the protection of a bankruptcy court with respect to this debt (or if the debt has been discharged in bankruptcy and has not been reaffirmed), this letter is for informational purposes only and is not an attempt to collect, recover, or offset the debt and should not be considered to be a demand for payment or a notice of personal liability. Please consult an attorney if you have any questions about your rights under bankruptcy law. RCS is a debt collector attempting to collect a debt. Any information obtained will be used for that purpose.

Sincerely,

Loss Mitigation Department
Residential Credit Solutions,Inc.

Date:  December 21, 2015
Investor Loan Number: REDAC

## MODIFICATION TRIAL PERIOD PLAN
### (Step One of Two-Step Documentation Process)

**Trial Period Plan Effective Date: 02/01/2016**
**Borrower ("I/We"):**    KULWINDER MUTTI

If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I"  For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

**Lender or Servicer ("Lender"):**    Residential Credit Solutions, Inc. (RCS), a Delaware Corporation

**Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"):**
**06/21/2007**
**Loan Number:** REDACT
**Property Address ( Property ):**    3230 S 259TH LN  KENT, WA 98032

If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section 1 continue to be true in all material respects, then the Lender will provide me with a Modification Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents". Capitalized terms used in this Plan and not defined have the meaning given to them in the Loan Documents.

If I have not already done so, I am providing confirmation of the reasons I cannot afford my mortgage payment and documents to perm it verification of all of my i income (except that I understand that I am not required to disclose any child support or alimony unless T wish to have such income considered) to determine whether I qualify for the offer described in this Plan (the "Offer") If my loan is in foreclosure, I understand that after I sign and return two copies of this Plan to the Lender, the Lender will send me a signed copy of this Plan if I qualify for the Offer or will send me written notice that I do not qualify for the Offer. If my loan is in foreclosure, this Plan will not take effect unless and until both I and the Lender sign it and Lender provides me with a copy of this Plan with the Lender's signature.

1.    **My Representations.  I certify, represent to Lender and agree:**

   A.    I am unable to afford my mortgage payments for the reasons indicated in my Hardship Affidavit and as a result, (i) I am either in default or believe I will be in default under the Loan Documents in the near future, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;
   B.    The Property has not been condemned;
   C.    There has been no change in the ownership of the Property since I signed the Loan Documents;
   D.    I am providing or already have provided documentation for all income that I receive (and I understand that I am not required to disclose any child support or alimony that I receive, unless I wish to have such income considered to qualify for the Offer);
   E.    Under penalty of perjury, all documents and information I have provided to Lender pursuant to this Plan, including the documents and information regarding my eligibility for the program, are true and correct; and
   F.    If Lender requires me to obtain credit counseling, I will do so.

2. The **Trial Period Plan.** On or before each of the following due dates, I will pay the Lender the amount set forth below ("Trial Period Payment"), which includes payment for Escrow Items, including real estate taxes, insurance premiums and other fees, if any, of U.S. $1,555.63.

| Trial Period Payment Number | Trial Period Payment | Due Date On or Before |
|---|---|---|
| 1 | $1,555.63 | 02/01/2016 |
| 2 | $1,555.63 | 03/01/2016 |
| 3 | $1,555.63 | 04/01/2016 |

The Trial Period Payment is an estimate of the payment that will be required under the modified loan terms, which will be finalized in accordance with Section 3 below. The actual payments under the modified loan terms, however, may be different

**\*I understand that my first payment and this signed Trial Period Plan must be received by the Lender no later than 02/01/2016 or I may not be accepted into the Modification Program.**

I agree that during the period, (the "Trial Period") commencing on the Trial Period Effective Date and ending on the earlier of: (i) the first day of the month following the month in which the last Trial Period Payment is due (the "Modification Effective Date") or (ii) termination of this Plan, I understand and acknowledge that:

A. TIME IS OF THE ESSENCE under this Plan. This means I must make all payments on or before the days that they are due;

B. Except as set forth in Section 2.C below, the Lender will suspend any scheduled foreclosure sale, provided I continue to meet the obligations under this Plan, but any pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended if this Plan terminates, and no new notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will be necessaly to continue the foreclosure action. All rights to such notices being hereby waived by me to the extent permitted by applicable law;

C If my property is located in Georgia, Hawaii, Missouri, or Virginia and a foreclosure sale is currently scheduled, the foreclosure sale will not be suspended and the Lender may foreclose if I have not made each and every Trial Period Payment that is due through the end of the month preceding the month in which the foreclosure sale is scheduled to occur. If a foreclosure sale occurs pursuant to this Section 2.C., this agreement shall be deemed terminated;

D. The Lender will hold the payments received during the Trial Period in a non- interest bearing account until they total an amount that is enough to pay my oldest delinquent monthly payment on my loan in full. I understand the Lender will not pay me interest on the amounts held in the account If there is any remaining money after such payment is applied, such remaining funds will be held by the Lender and not posted to my account until they total an amount that is enough to pay the next oldest delinquent monthly payment in full;

E. When the Lender accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of, the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the Loan. Documents unless such payments are sufficient to completely cure my entire default under the Loan Documents;

F. If prior to the Modification Effective Date, (i) the Lender does not provide me a fully executed copy of this Plan and the Modification Agreement; (ii) I have not made the Trial Period payments required under Section 2 of this Plan; or (iii) the Lender determines that any of my representations in Section 1 were not true and correct as of the date I signed this Plan or are no longer true and correct at any time during the Trial Period; or (iv) I do not provide all information and documentation required by the Lender, the Loan Documents will not be modified and this Plan will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me; and

G. I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one

## Modification Trial Payment Coupon

Enclosed is my Trial Period Payment number  3  of  3   Trial Period Payments, due on 04/01/2016.

Trial Period Payment amount required: $1,555.63

Loan number: [REDACTED]

Please make your check payable to *Residential Credit Solutions* and include your loan number on your check.

Our payment mailing address is: **ATTN: HAMP Payment Processing Center**
**P.O. BOX 163229**
**Fort Worth, TX 76161**

All payments **must be received by** Residential Credit Solutions no later than the last day of the month in order to be applied for that month.



# EXHIBIT D

Trial Period Plan Payments

January – March, 2016

Cawood K. Bebout WSBA #34904
1023 S. 3rd St., Mount Vernon, WA 98273
Office (360) 419-3196; Fax (360) 336-1962
bebout@fidalgo.net



**U.S. Postal Service**
**CERTIFIED MAIL® RECEIPT**
Domestic Mail Only

For delivery information, visit our website at www.usps.com®

FORT WORTH TX 761 48

OFFICIAL USE

| | |
|---|---|
| Postage | $ $3.45 |
| Certified Fee | $2.80 |
| Return Receipt Fee (Endorsement Required) | $0.00 |
| Restricted Delivery Fee (Endorsement Required) | N/A |
| Total Postage & Fees | $ $1.42 |

0233
06 Postmark Here
JAN 20 2016
01/20/2016

Sent To  Harp Payment Processing Center
Street & Apt. No., or PO Box No.  P.O. Box 163229
City, State, ZIP+4  Fort Worth, TX 76161

PS Form 3800, July 2014

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Harp Payment Processing Center
P.O. Box 163229
Fort Worth, TX 76161

9590 9402 1278 5246 1781 42

2. Article Number (Transfer from service label)
7014 1820 0000 8007 9434

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent  ☐ Addressee
B. Received by (Printed Name)  C. Date of Delivery  JAN 25 20
D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

---

0806949    11-24
Office AU #    1210(8)

**CASHIER'S CHECK**

SERIAL #: REDACTE
ACCOUNT#: REDACT

Remitter:     KULWINDER K MUTTI
Purchaser:    KULWINDER K MUTTI
Purchaser Account:   REDACTED
Operator I.D.   u443174     u372262
Funding Source:   Paper Items(s)
PAY TO THE ORDER OF     ***RESIDENTIAL CREDIT SOLUTIONS ***

January 20, 2016

***One thousand five hundred fifty-five dollars and 63 cents***     **$1,555.63**

Payee Address:
Memo:    LOAN # 2200080614

WELLS FARGO BANK, N.A.
204 W MEEKER ST
KENT, WA 98032
FOR INQUIRIES CALL (480) 394-3122

NOTICE TO PURCHASER–IF THIS INSTRUMENT IS LOST,
STOLEN OR DESTROYED, YOU MAY REQUEST CANCELLATION
AND REISSUANCE. AS A CONDITION TO CANCELLATION AND
REISSUANCE, WELLS FARGO & COMPANY MAY IMPOSE A
FEE AND REQUIRE AN INDEMNITY AGREEMENT AND BOND

VOID IF OVER US $  1,555.63

**NON-NEGOTIABLE**

**Purchaser Copy**

FB004    MKPN: 50211976



U.S. Postal Service™
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

FORT WORTH, TX 76141

| | | |
|---|---|---|
| Postage | $ | $3.45 |
| Certified Fee | | 13.80 |
| Return Receipt Fee (Endorsement Required) | | 15.00 |
| Restricted Delivery Fee (Endorsement Required) | | N/A |
| Total Postage & Fees | $ | $6.75 |

0233
08 Postmark Here
02/23/2016

Sent To
Attn: HAMP PAYMENT PROCESSING Center
Street & Apt. No.; or PO Box No. P.O. BOX 163229
City, State, ZIP+4 Fort Worth, TX 76161

**SENDER: COMPLETE THIS SECTION**

■ Complete items 1, 2, and 3.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Attn: HAMP PAYment Processing Center
P.O. Box 163229
Fort Worth, TX 76161

9590 9402 1204 5246 3689 13

2. Article Number (Transfer from service label)

7014 1820 0000 8008 6579

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent ☐ Addressee
B. Received by (Printed Name)  C. Date of Delivery
D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

FEB 26 2016

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053
Domestic Return Receipt

---

0006949  11-24
Office AU #  1210(8)

**CASHIER'S CHECK**

Remitter: KULWINDER KAUR MUTTI
Purchaser: SHARAN KIRPAL SINGH
Purchaser Account: REDACTED
Operator I.D.: wash9010
Funding Source: Paper items(s)

PAY TO THE ORDER OF ***RESIDENTIAL CREDIT SOLUTIONS***

SERIAL #: REDACTED
ACCOUNT#: REDACTED

February 23, 2016

***One thousand five hundred fifty-five dollars and 63 cents***

**$1,555.63**

Payee Address
Memo  RE: 2200080614

WELLS FARGO BANK, N.A.
204 W MEEKER ST
KENT WA 98032
FOR INQUIRIES CALL (480) 394-3122

NOTICE TO PURCHASER—IF THIS INSTRUMENT IS LOST,
STOLEN OR DESTROYED. YOU MAY REQUEST CANCELLATION
AND REISSUANCE. AS A CONDITION TO CANCELLATION AND
REISSUANCE, WELLS FARGO & COMPANY MAY IMPOSE A
FEE AND REQUIRE AN INDEMNITY AGREEMENT AND BOND

VOID IF OVER US $ 1,555.63

**NON-NEGOTIABLE**

**Purchaser Copy**

FB004  w4203 502119^6



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

FORT WORTH TX 76161

| | |
|---|---|
| Postage | $ $3.45 |
| Certified Fee | $3.80 |
| Return Receipt Fee (Endorsement Required) | $0.00 |
| Restricted Delivery Fee (Endorsement Required) | N/A |
| Total Postage & Fees | $ $7.30 |

7014 1820 0000 8009 9364

Sent To $13.55

HAMP Payment Proce $83.75 Centre
Street & Apt. No. or PO Box No. PoBox 163229
City, State, ZIP+4 Fort worth TX 76161

PS Form 3800, July 2014       See Reverse for Instructions

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Hamp Payment Processing Centre

PoBox 163229
Fort worth TX 76161

9590 9402 1204 5246 4042 22

2. Article Number (Transfer from service label)

7014 1820 0000 8009 9364

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____  ☐ Agent   ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
Jeffrey L Burton    MAR 3 0 2016

D. Is delivery address different from item 1?  ☐ Yes
If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

---

0006949      11-24
Office AU #      1210(8)

Remitter:      KIRPAL S MUTTI
Purchaser:      KIRPAL S MUTTI
Purchaser Account:      REDAC
Operator I.D.:      u216033      u216033
Funding Source:      Paper Items(s)
PAY TO THE ORDER OF

**CASHIER'S CHECK**

SERIAL #: REDACT
ACCOUNT#: REDACTE

***RESIDENTIAL CREDIT COLUTIONS***
***REF: LOAN # 2200080614***

***One thousand five hundred fifty-five dollars and 63 cents***

March 28, 2016

**$1,555.63**

Payee Address:
Memo:

WELLS FARGO BANK, N.A.
204 W MEEKER ST
KENT, WA 98032
FOR INQUIRIES CALL (480) 394-3122

NOTICE TO PURCHASER–IF THIS INSTRUMENT IS LOST, STOLEN OR DESTROYED, YOU MAY REQUEST CANCELLATION AND REISSUANCE. AS A CONDITION TO CANCELLATION AND REISSUANCE, WELLS FARGO & COMPANY MAY IMPOSE A FEE AND REQUIRE AN INDEMNITY AGREEMENT AND BOND.

VOID IF OVER US $  1,555 63

**NON-NEGOTIABLE**

**Purchaser Copy**

FB004      MULTI 50211978

# EXHIBIT E

DiTech Payment History

Cawood K. Bebout WSBA #34904
1023 S. 3rd St., Mount Vernon, WA 98273
Office (360) 419-3196; Fax (360) 336-1962
bebout@fidalgo.net

DITECH FINANCIAL LLC

## PO BOX 6172
## RAPID CITY, SD 57709-6172
## 1-877-624-8026

P5111-496-4          CUSTOMER ACCOUNT ACTIVITY STATEMENT          DATE 01/14/17

LSS ID RUSP011617                                                 PAGE 01

KULWINDER MUTTI          ACCOUNT HISTORY FROM MARIX SERVICING, LLC

520 EAST DENNY WAY

3230 S 259TH LN

KENT          WA 98032


3230 S 259TH LN

KENT          WA 98032

************************************************************************************

------------------------- CURRENT ACCOUNT INFORMATION --------------------------

|  | DATE | TOTAL | PRINCIPAL | LOAN | CURRENT |  |
|---|---|---|---|---|---|---|
|  | PAYMENT | PAYMENT | & INTEREST | INTEREST | PRINCIPAL | ESCROW |
| LOAN NUMBER | DUE | AMOUNT | PAYMENT | RATE | BALANCE | BALANCE |
| REDACTED | 08-01-12 | 1236.73 | 853.85 | 2.00000 | 270,721.07 | 19,363.20- |
| 2ND MORTGAGE: |  |  | 0.00 | 0.00000 | 6,038.82 |  |
| REST ESC BAL |  |  |  |  |  | NEW SERV LN # |
| 0.00 |  |  |  |  | REDACTED |  |

************************************************************************************

ACTIVITY FOR PERIOD 01-13-15 - 01-14-17

| PROCESS | DUE | TRANSACTION | TRANSACTION | EFFECTIVE DATE |
|---|---|---|---|---|
| DATE | DATE | CODE | DESCRIPTION | OF TRANSACTION |

--------------------------------------------------------------------------------

| TRANSACTION | PRIN PD/ | | ESCROW PD/ | -------------OTHER------------- |
|---|---|---|---|---|
| AMOUNT | BALANCE | INTEREST | BALANCE | AMOUNT | CODE/DESCRIPTION |

```
------------------------------------------------------------------------------------
12-22-16  00-00  632  CORPORATE ADVANCE DISBURSEMENT
          0.46      0.00      0.00      0.00              FC COURT COSTS
                                                7,765.95  MREC BAL
12-22-16  00-00  630  CORPORATE ADVANCE DISBURSEMENT
        405.00      0.00      0.00      0.00              FC ATTY FEES
                                                7,765.49  MREC BAL
12-16-16  08-12  152  LATE CHARGE ASSESSMENT
          0.00      0.00      0.00      0.00     56.89-1 LATE CHARGES
                                                1,770.81 1 BAL LATE CHARGES
12-01-16  08-12  161  ESCROW ADVANCE
        759.00      0.00      0.00    759.00
12-01-16  12-16  351  HAZARD INSURANCE
        759.00-     0.00      0.00    759.00-
               270,721.07           19,363.20-  NEW PRINCIPAL/ESCROW BALANCES
11-16-16  08-12  152  LATE CHARGE ASSESSMENT
          0.00      0.00      0.00      0.00     56.89-1 LATE CHARGES
                                                1,713.92 1 BAL LATE CHARGES
~

                              DITECH FINANCIAL LLC
                                 PO BOX 6172
                           RAPID CITY, SD 57709-6172
                              1-877-624-8026
```

KULWINDER MUTTI

LOAN NUMBER: REDACTED

```
                    ACTIVITY FOR PERIOD 01-13-15 - 01-14-17

PROCESS   DUE    TRANSACTION        TRANSACTION              EFFECTIVE DATE

DATE      DATE   CODE               DESCRIPTION              OF TRANSACTION
-------------------------------------------------------------------------------

TRANSACTION  PRIN PD/           ESCROW PD/ -------------OTHER-------------
```

```
            AMOUNT      BALANCE     INTEREST   BALANCE    AMOUNT   CODE/DESCRIPTION
------------------------------------------------------------------------------------
11-14-16  00-00  632  CORPORATE ADVANCE DISBURSEMENT
          1,139.84      0.00        0.00       0.00              FC COURT COSTS
                                                        7,360.49  MREC BAL
10-24-16  08-12  161  ESCROW ADVANCE
          1,983.55      0.00        0.00   1,983.55
10-24-16  10-16  312  COUNTY TAX
          1,983.55-     0.00        0.00   1,983.55-
                     270,721.07            18,604.20-  NEW PRINCIPAL/ESCROW BALANCES
10-17-16  08-12  152  LATE CHARGE ASSESSMENT
          0.00          0.00        0.00       0.00    56.89-1 LATE CHARGES
                                                        1,657.03 1 BAL LATE CHARGES
09-16-16  08-12  152  LATE CHARGE ASSESSMENT
          0.00          0.00        0.00       0.00    56.89-1 LATE CHARGES
                                                        1,600.14 1 BAL LATE CHARGES
08-23-16  08-12  173  PAYMENT
          0.00          0.00        0.00       0.00    976.27 *
                                                        976.27-  SUSPENSE
                                                          0.00   SUSP-BAL
08-23-16  00-00  745  RESTRICTED CORPORATE ADVANCE ADJUSTMENT
          976.27-       0.00        0.00       0.00              FUND CORP ADV
                                                        6,220.65  MREC BAL
08-16-16  08-12  152  LATE CHARGE ASSESSMENT
          0.00          0.00        0.00       0.00    56.89-1 LATE CHARGES
                                                        1,543.25 1 BAL LATE CHARGES
07-16-16  08-12  152  LATE CHARGE ASSESSMENT
          0.00          0.00        0.00       0.00    49.60-1 LATE CHARGES
                                                        1,486.36 1 BAL LATE CHARGES
04-05-16  07-12  173  PAYMENT
          0.00          0.00        0.00       0.00
04-05-16  07-12  168  REPAY OF ESCROW ADVANCE
          0.00          0.00        0.00     382.88-   382.88
04-05-16  07-12  173  PAYMENT                                          04-02-16
```

```
        0.00      401.98      451.87     382.88  1,236.73-  SUSPENSE

                                                   976.27  SUSP-BAL

              270,721.07                 16,620.65-  NEW PRINCIPAL/ESCROW BALANCES

              6,038.82                               NEW PRINCIPAL/ESCROW BALANCES
```

DITECH FINANCIAL LLC

PO BOX 6172

RAPID CITY, SD 57709-6172

1-877-624-8026

KULWINDER MUTTI

LOAN NUMBER: REDACTED

ACTIVITY FOR PERIOD 01-13-15 - 01-14-17

| PROCESS | DUE | TRANSACTION | | TRANSACTION | | EFFECTIVE DATE |
|---------|-----|-------------|---|-------------|---|----------------|
| DATE | DATE | CODE | | DESCRIPTION | | OF TRANSACTION |

```
    TRANSACTION  PRIN PD/              ESCROW PD/ -------------OTHER-------------
    AMOUNT       BALANCE   INTEREST  BALANCE   AMOUNT  CODE/DESCRIPTION
```

```
04-05-16  07-12  173  PAYMENT                                        04-02-16
     1,555.63      0.00      0.00      0.00  1,555.63  SUSPENSE
                                            2,213.00  SUSP-BAL
04-02-16  06-12  173  PAYMENT
         0.00      0.00      0.00      0.00
04-02-16  06-12  168  REPAY OF ESCROW ADVANCE
         0.00      0.00      0.00   382.88-  382.88
04-02-16  06-12  173  PAYMENT                                        02-29-16
         0.00    401.31    452.54   382.88  1,236.73-  SUSPENSE
                                              657.37  SUSP-BAL
              271,123.05                 17,003.53-  NEW PRINCIPAL/ESCROW BALANCES
              6,038.82                               NEW PRINCIPAL/ESCROW BALANCES
```

03-30-16  06-12  161  ESCROW ADVANCE

    1,983.55       0.00     0.00  1,983.55

03-30-16  04-16  312  COUNTY TAX

    1,983.55-     0.00     0.00  1,983.55-

         271,524.36         17,386.41-  NEW PRINCIPAL/ESCROW BALANCES

03-01-16  06-12  172  PAYMENT                                 02-29-16

    1,555.63      0.00     0.00     0.00  1,555.63  SUSPENSE

                                1,894.10  SUSP-BAL

03-01-16  06-12  143  PRINCIPAL BALANCE DATA

        0.00  6,038.82-   0.00    0.00

         271,524.36             NEW PRINCIPAL/ESCROW BALANCES

           6,038.82               NEW PRINCIPAL/ESCROW BALANCES

03-01-16  06-12  143  PRINCIPAL BALANCE DATA

        0.00  6,038.82   0.00    0.00

         271,524.36             NEW PRINCIPAL/ESCROW BALANCES

02-26-16  00-00  745  RESTRICTED CORPORATE ADVANCE ADJUSTMENT

     455.00     0.00    0.00    0.00       FC ATTY FEES

                           7,196.92  MREC BAL

02-26-16  00-00  745  RESTRICTED CORPORATE ADVANCE ADJUSTMENT

      0.92     0.00    0.00    0.00

                           6,741.92  MREC BAL

02-26-16  00-00  745  RESTRICTED CORPORATE ADVANCE ADJUSTMENT

    1,314.00     0.00    0.00    0.00       TITLE SEARCH

                           6,741.00  MREC BAL

P5111-496-4      CUSTOMER ACCOUNT ACTIVITY STATEMENT      DATE 01/14/17

LSS ID RUSP011617                                       PAGE 04

KULWINDER MUTTI

ACTIVITY FOR PERIOD 01-13-15 - 01-14-17

| PROCESS DATE | DUE DATE | TRANSACTION CODE | | TRANSACTION DESCRIPTION | | EFFECTIVE DATE OF TRANSACTION |
|---|---|---|---|---|---|---|
| TRANSACTION AMOUNT | PRIN PD/ BALANCE | | INTEREST BALANCE | ESCROW PD/ AMOUNT | | ------------OTHER------------- CODE/DESCRIPTION |

02-26-16  00-00  745  RESTRICTED CORPORATE ADVANCE ADJUSTMENT

|  | 10.00 | 0.00 | 0.00 | 0.00 | | INSPECTION |
|---|---|---|---|---|---|---|
|  |  |  |  | 5,427.00 | MREC BAL |  |

02-26-16  00-00  745  RESTRICTED CORPORATE ADVANCE ADJUSTMENT

|  | 165.00 | 0.00 | 0.00 | 0.00 | |  |
|---|---|---|---|---|---|---|
|  |  |  |  | 5,417.00 | MREC BAL |  |

02-26-16  00-00  745  RESTRICTED CORPORATE ADVANCE ADJUSTMENT

|  | 562.50 | 0.00 | 0.00 | 0.00 | |  |
|---|---|---|---|---|---|---|
|  |  |  |  | 5,252.00 | MREC BAL |  |

02-26-16  00-00  745  RESTRICTED CORPORATE ADVANCE ADJUSTMENT

|  | 165.00 | 0.00 | 0.00 | 0.00 | |  |
|---|---|---|---|---|---|---|
|  |  |  |  | 4,689.50 | MREC BAL |  |

02-26-16  00-00  745  RESTRICTED CORPORATE ADVANCE ADJUSTMENT

|  | 3,330.50 | 0.00 | 0.00 | 0.00 | |  |
|---|---|---|---|---|---|---|
|  |  |  |  | 4,524.50 | MREC BAL |  |

02-26-16  00-00  745  RESTRICTED CORPORATE ADVANCE ADJUSTMENT

|  | 1,179.00 | 0.00 | 0.00 | 0.00 | |  |
|---|---|---|---|---|---|---|
|  |  |  |  | 1,194.00 | MREC BAL |  |

02-26-16  00-00  745  RESTRICTED CORPORATE ADVANCE ADJUSTMENT

|  | 15.00 | 0.00 | 0.00 | 0.00 | | INSPECTION |
|---|---|---|---|---|---|---|
|  |  |  |  | 15.00 | MREC BAL |  |

02-24-16  06-12  145  ADJUSTMENT

|  | 0.00 | 0.00 | 0.00 | 0.00 | 15,402.86 |
|---|---|---|---|---|---|

02-24-16  06-12  143  PRINCIPAL BALANCE DATA

|  | 0.00 | 6,038.82- | 0.00 | 0.00 |  |
|---|---|---|---|---|---|
|  | 271,524.36 |  |  | NEW PRINCIPAL/ESCROW BALANCES |  |

```
                    6,038.82                        NEW PRINCIPAL/ESCROW BALANCES

02-23-16  06-12  170  PAYMENT

      15,402.86        0.00       0.00      0.00 15,402.86   SUSPENSE

                                                    338.47   SUSP-BAL

02-22-16  06-12  170  PAYMENT

       5,402.87-       0.00       0.00      0.00  5,402.87-  SUSPENSE

                                                15,064.39-  SUSP-BAL

02-22-16  06-12  170  PAYMENT

       9,661.52-       0.00       0.00      0.00  9,661.52-  SUSPENSE

                                                 9,661.52-  SUSP-BAL

~
```

DITECH FINANCIAL LLC

PO BOX 6172

RAPID CITY, SD 57709-6172

1-877-624-8026

KULWINDER MUTTI

LOAN NUMBER: REDACTED

ACTIVITY FOR PERIOD 01-13-15 - 01-14-17

| PROCESS | DUE | TRANSACTION | | TRANSACTION | | EFFECTIVE DATE |
|---------|-----|-------------|--|-------------|--|----------------|
| DATE | DATE | CODE | | DESCRIPTION | | OF TRANSACTION |

```
      TRANSACTION   PRIN PD/              ESCROW PD/ -------------OTHER-------------
      AMOUNT        BALANCE   INTEREST  BALANCE   AMOUNT   CODE/DESCRIPTION
```

02-22-16  06-12  132  FEE/LATE CHARGE ADJUSTMENT

```
         0.00      0.00      0.00      0.00  1,436.76-1 LATE CHARGES

                                            1,436.76 1 BAL LATE CHARGES
```

02-22-16  06-12  142  LOAN SETUP

```
         0.00 271,524.36-    0.00      0.00

              271,524.36                     NEW PRINCIPAL/ESCROW BALANCES
```

# EXHIBIT F

DiTech Mortgage Statement

Cawood K. Bebout WSBA #34904
1023 S. 3rd St., Mount Vernon, WA 98273
Office (360) 419-3196; Fax (360) 336-1962
bebout@fidalgo.net

 **ditech.**

PO Box 6172, Rapid City, SD 57709-6172

## BILLING STATEMENT

| Statement Date | Due Date | Amount Due |
|---|---|---|
| 08/16/2016 | 09/01/2016 | **$65,605.03** |

3-776-04825-0004342-001-1-001-000-000-000
‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖

 KULWINDER MUTTI
520 EAST DENNY WAY
3230 S 259TH LN
KENT WA 98032-9758

If payment is received after 09/16/2016,
a $56.89 late fee will be charged

 AutoPay is Free Online at Ditech.com

 Mail your payment to
PO Box 7169
Pasadena, CA 91109-7169

☎ Call 1-800-643-0202
Monday - Friday, 7a.m. - 8 p.m. CST
Saturday, 7a.m. - 1 p.m. CST

### Account Information

| | |
|---|---|
| Loan Number | **REDACT** |
| Principal Balance [1] | $270,721.07 |
| Escrow Balance | ($16,620.65) |
| Deferred Balance | $6,038.82 |
| Advance Balance [^] | $7,196.92 |
| Funds in Suspense Balance | $976.27 |
| Interest Rate | 4.000% |
| Interest Type | Actuarial |
| Prepayment Penalty | No |
| Next Rate Reset | 08/2017 |
| Property Address: | 3230S 259TH LN
KENT WA 98032 |

[1] This is not your payoff amount. Please login to
MyAccount at ditech.com for a payoff figure.

### Past Payments Breakdown

| Since Last Statement/Month | |
|---|---|
| Principal | $0.00 |
| Interest | $0.00 |
| Escrow (Tax & Insurance) | $0.00 |
| Total Fees and Charges | $0.00 |
| Funds in Suspense | $0.00 |
| **Total Paid** | $0.00 |
| **Year to Date** | |
| Principal | $803.29 |
| Interest | $904.41 |
| Escrow (Tax & Insurance) | $765.76 |
| Total Fees and Charges | $0.00 |
| Funds in Suspense | $976.27 |
| **Total Paid Year to Date** | $3,449.73 |

### Explanation of Amount Due

| | |
|---|---|
| Principal | $300.41 |
| Interest | $837.36 |
| Escrow (Tax & Insurance) | $382.88 |
| Regular Monthly Payment | $1,520.65 |
| Total New Fees and Charges | $56.89 |
| Past Due Amount | $64,027.49 |

### Transaction Activity Since Last Statement

| Date | Description | Charges | Payments |
|---|---|---|---|
| 08/16/16 | Late Charge Asmt | $56.89 | $0.00 |

### Important Messages *(More information on the Back)*

^Advances represent money advanced by servicer to pay taxes, insurance and any other amounts
currently due that are not part of an escrow account.

Your account is now severely delinquent and your immediate action is required. Contact your account
representative, Lilliana G at 1-800-643-0202, extension 31607 to make immediate payment arrangements.

### Total Amount Due: $65,605.03

**\*\*Delinquency Notice\*\***

You are late on your mortgage payments. Failure to
bring your loan current may result in fees and foreclosure
- the loss of your home. As of August 16, you are 1476
days delinquent on your mortgage loan. Your account
first became delinquent on 05/01/2012

Recent Account History
- Payment Due 03/01/16:  Unpaid amount of $1,374.85
- Payment Due 04/01/16:  Unpaid amount of $1,374.85
- Payment Due 05/01/16:  Unpaid amount of $1,374.85
- Payment Due 06/01/16:  Unpaid amount of $1,374.85
- Payment Due 07/01/16:  Unpaid amount of $1,374.85
- Payment Due 08/01/16:  Unpaid amount of $1,520.65
-Total: $65,605.03 due. You must pay this amount
to bring your loan current.

For a list of homeownership counselors or counseling
organizations in your area, go to
http://www.hud.gov/offices/hsg/sfh/hcc/hca.cfm or call
800-569-4287

---

✂ - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - ✂

**PLEASE DETACH AND RETURN THIS PORTION WITH YOUR PAYMENT**

KULWINDER MUTTI
520 EAST DENNY WAY
3230 S 259TH LN
KENT WA 98032-9758

☐ Check box for address
changes on reverse side.

Make checks payable to Ditech Financial.

| Loan Number | Statement Date | Due Date | Amount Due |
|---|---|---|---|
| **REDAC** | 08/16/2016 | 09/01/2016 | **$65,605.03** |

If payment is received after 09/16/2016,
a $56.89 late fee will be charged

| | | |
|---|---|---|
| Amount Due | $ | 6 5 , 6 0 5 . 0 3 |
| Additional Escrow | $ | |
| Additional Late | $ | |
| Additional Principal | $ | |
| Total Amount Enclosed | $ | |

Ditech
PO Box 7169
Pasadena, CA 91109-7169

00379068 0    00152065    0006560503

# EXHIBIT G

Notice of Error
March 27, 2018

Cawood K. Bebout WSBA #34904
1023 S. 3rd St., Mount Vernon, WA 98273
Office (360) 419-3196; Fax (360) 336-1962
bebout@fidalgo.net

 **Dann** Illinois | New Jersey | New York | Ohio | Oregon
**Law**

Telephone: 216-373-0539
Facsimile: 216-373-0536
Email: Notices@DannLaw.com

March 27, 2018

Rushmore Loan Management Services LLC
P.O. Box 52262
Irvine, CA 92619

*\*Sent via Certified Mail return receipt requested [7014 2120 0003 0667 3679]*

**In the Matter of:**

Borrowers' Names:     Kulwinder and Kirpral Mutti
Property Address:     3230 S. 259th Ln., Kent, WA 98032
Mortgage Account No.:  REDACTED

*\*If responding to this correspondence by e-mail, please send to notices@dannlaw.com*

**Re: Notice of error pursuant to 12 C.F.R. § 1024.35(b)(11) for failing to honor the terms of the TPP and implement a permanent modification; Notice of errors pursuant to 12 C.F.R. § 1024.35(b)(2) for failure to properly apply accepted payments to principal, interest, escrow or other charges under the terms of the mortgage loan and applicable law**

Dear Sir or Madam:

Please consider this letter to constitute a Notice of Error under 12 C.F.R. § 1024.35 of Regulation X of the Mortgage Servicing Act under the Real Estate Settlement Procedures Act (RESPA), which became effective on January 10, 2014. These amendments implemented the Dodd-Frank Wall Street Reform and Consumer Protection Act provisions regarding mortgage loan servicing.

Pursuant to 12 C.F.R. § 1024.35(d), you must acknowledge receipt of this notice *within five (5) days* thereof, excluding legal public holidays, Saturdays and Sundays.

Pursuant to 12 C.F.R. § 1024.35(e)(3)(i)(C), you must advise us of your response to this notice *within thirty (30) days* of receipt thereof, excluding legal public holidays, Saturdays and Sundays.

The written authority of the above-referenced borrowers (the "Borrowers") for this notice to my law firm is enclosed herewith and incorporated herein by this reference.



**Background Information:**

On or about December 21, 2015, Residential Credit Solutions, Inc. ("RCS"), a prior servicer for the above-referenced loan ("Loan"), sent a Trial Period Plan (the "TPP") to the Borrowers. *A copy of the TPP is enclosed for your reference and review.* Pursuant to the TPP, the Borrowers were to make three (3) monthly payments each in the amount of $1,555.63 for the months of February 2016 through April 2016. Pursuant to the terms of the TPP, upon the Borrowers' acceptance of the TPP and their timely remittance of such payments, RCS was to calculate and offer a permanent loan modification to the Borrowers.

The Borrowers timely accepted the TPP and remitted the requisite three (3) payments in a timely manner pursuant to the terms of the TPP. *Proof of the Borrowers' payments pursuant to the TPP is enclosed for your reference and review.* Servicing of the Loan transferred from RCS to Ditech Financial, LLC ("Ditech") on or about February 22, 2016. While the Borrowers continued to remit the TPP payments to RCS, RCS forwarded such payments to Ditech and Ditech received such payments in a timely manner. *A copy of the transaction history of the Loan from Ditech evidencing such is enclosed for your reference and review.* Rather than apply the payments in accordance with the TPP, however, Ditech applied the remaining TPP payments under the terms of the Loan rather than the effective TPP and claimed that the loan was delinquent. *A copy of a mortgage statement from Ditech evidencing such is enclosed for your reference and review.* Ditech refused to honor the TPP through their servicing of the Loan. Servicing of the Loan transferred to Rushmore Loan Management Services ("Rushmore") on or about January 19, 2017 due for the August 2012 payment.

Despite the Borrowers' complete compliance with and satisfaction of the terms of the TPP, neither RCS, nor any subsequent servicer, including Rushmore, ever abided by the terms of the TPP offered the Borrowers a permanent loan modification consistent with the terms of the TPP. Rather than adhere to the terms of the TPP and offer a permanent loan modification for which the owner or investor of the loan had approved the Borrowers' eligibility for, RCS, Ditech, and Rushmore, improperly applied the payments as they saw fit to keep the Borrower in a delinquent and default status.

**Notice of error pursuant to 12 C.F.R. § 1024.35(b)(11) for failing to honor the terms of the TPP and implement a permanent modification:**

Despite the Borrowers' being approved for the TPP and satisfying all of their obligations thereunder, RCS, Ditech, and Rushmore, have wholly failed to take any necessary steps to properly board the TPP and implement, onboard, or otherwise offer and adhere to the permanent loan modification to which the Borrowers were entitled pursuant to the TPP.

Rushmore's actions, in failing to implement, onboard, or otherwise offer and adhere to the permanent loan modification to which the Borrowers were entitled pursuant to the TPP, constitute *one (1) clear, distinct, and separate error* in the servicing of the Loan pursuant to 12 C.F.R. § 1024.35(b)(11).


**Notice of errors pursuant to 12 C.F.R. § 1024.35(b)(2) for failure to properly apply accepted payments to principal, interest, escrow or other charges under the terms of the mortgage loan and applicable law:**

The Borrowers remitted at least three (3) total payments to RCS and Ditech from February 2016 through April 2016 in satisfaction of the terms of the TPP in the hopes that they would implement a permanent loan modification pursuant to the language in the TPP. Rather, RCS and Ditech improperly applied all three (3) of the payments the Borrowers submitted in satisfaction of the TPP in accordance with the original terms of the Loan rather than the terms of the TPP.

Rushmore's actions, in failing to correct such actions and apply each of the three (3) accepted payments since the implementation of the TPP in accordance with the terms of the TPP, constitute ***three (3) clear, distinct, and separate errors*** in the servicing of the Loan pursuant to 12 C.F.R. § 1024.35(b)(2), one (1) such error for each such payment Rushmore failed to ensure was properly apply.

**Conclusion and Requested Actions:**

In total, the Borrowers hereby asserts that Rushmore committed at least ***four (4) significant errors*** in regards to the Loan.

Accordingly, the Borrowers hereby demand that you immediately honor the terms and spirit of the TPP and implement the permanent loan modifications for which the Borrowers would have been approved at the conclusion of the TPP. If you have reported negative information to any Credit Bureaus, including but not limited to TransUnion, Equifax, and Experian, since you obtained servicing rights to the Loan, take any necessary steps to correct the same. Lastly, please remit funds for restitution to the Borrowers including but not limited to reimbursement of the all legal fees and expenses incurred since the implementation of the TPP.

Please correct these errors as requested and provide us with notification of the correction, the date of the correction, and contact information for further assistance; or, after conducting a reasonable investigation, provide the Borrower, **through our firm**, with a notification that includes a statement that you have determined that no such error occurred, a statement of the reason(s) for this determination, a statement of the Borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the Borrower can request such documents, and contact information for further assistance.

Sincerely,

Whitney E. Kaster

Enclosures



In the Matter of:

Borrower(s): Kulwinder K Mutti and Kirpal S Mutti

Property Address: 3230 S 259th LN Kent, WA. 98032

Mortgage Loan No.: REDACTE

## Re: Written Consent/Authorization for Requests for Information & Notices of Error

To Whom It May Concern:

I/We, the borrower(s), do hereby authorize and provide our written consent and authorization for
Dann Law , the Servicer of the above-referenced loan, to fully
cooperate with, comply with, and provide any and all information requested or demanded by and
through any and all Requests for Information and/or Notices of Error pertaining to our loan, pursuant to
the Real Estate Settlement and Procedures Act (Regulation X) and/or the Truth in Lending Act
(Regulation Z) which may be sent by Attorneys on our behalf. Said counsel represents us in any and all
pending or contemplated legal matters concerning the above-referenced loan. Please respond to any
and all such Requests and Notices at the following address:

DannLaw
P.O. Box 6031040
Cleveland, OH 44103

Signed: _____  Date: 03/22/2018

Print Name: Kulwinder K Mutti

Signed: _____  Date: 03/22/2018

Print Name: Kirpal S Mutti

---

### DannLaw is an Ohio professional corporation

| | | | |
|---|---|---|---|
| Marc Dann[1] | Daniel Solar[1] | [1] Admitted In Ohio | Mailing address: |
| Emily White[1] | Whitney Kaster[1] | [2] Admitted in Illinois | PO Box 6031040, Cleveland, OH 44115 |
| Brian Flick[1, 5] | Bill Behrens[1] | [3] Admitted in New Jersey | |
| Rusty Payton[2] | Donna Kolis[1] | [4] Admitted in New York | Telephone: 216-373-0539 |
| Javier Merino[3, 4] | | [5] Admitted in Kentucky | Fax: 216-373-0536 |



Residential Credit Solutions, Inc
P.O. Box 163229, Fort Worth, Texas 76161-3229

Date:   December 21, 2015

Borrower(s):        KULWINDER MUTTI
Mailing Address:    C O LEEN AND O SULLIVAN 520 EAST DENNY WAY  SEATTLE, WA  98122
Property Address:   3230 S 259TH LN KENT, WA 98032

RE: Trial Period Plan
    Loan Number: REDACTED

Dear KULWINDER MUTTI ,

Attached is the Trial Period Plan that was granted in response to your request for assistance with your loan.

Submitted herewith, you will find the original unexecuted Trial Period Plan. We request that you return to us, if via US Mail, two (2) duplicate original Trial Period Plan(s), each signed and dated. If there are notary provisions at the end or attached, you must sign both copies before a notary public and return the notarized copies to us. Make sure to keep a copy for your records.

We must receive your Trial Period Plan (s), and the $1,555.63 in certified funds or you may submit your first Trial Period Plan payment to RCS, no later than 02/01/2016 or this transaction will be null and void.

Please submit the payment, any other documentation, and/or an executed copy of the Will and/or Heirship, or any other documents concerning the rightful owner of the property, directly to our office at Residential Credit Solutions, Inc. (RCS), 4708 Mercantile Dr., Fort Worth, TX 76137, no later than 02/01/2016 or this transaction will be null and void.

If you prefer to bank wire the funds, please have wired to the following bank account:

    Texas Capital Bank
    2350 Lakeside Blvd Ste. 800
    Richardson, TX 75082
    Routing: 111017979
    Account: 2111019051

Residential Credit Solutions, INC
4708 Mercantile Dr.,
Fort Worth, TX 76137

## Modification Plan
## Trial Period Payment Coupon



Below are your Trial Period Payment Coupons. Please be aware that we must receive your first Trial Period Payment no later than the last business day of the month indicated on your Trial Period Plan Notice or you will not be eligible for the current offer.

All other Trial Period Payments must also be received by the dates indicated on the coupons.

**ACH and Flex Pay Customers:** If you are currently on ACH or Flex Pay through the Mortgage Service Center, you must still mail your trial period payments using the coupons below. Your ACH or Flex Pay will be stopped when your first trial payment is received. If you are approved for a permanent Modification, you will be sent a re-activation form to return with your permanent Modification agreement so that these services can begin again with your permanent Modification.

**Paperless Customers:** If you currently receive paperless statements through the Web site, please be aware that you will continue to receive alerts about payment application. However, the alerts will show your payments applied to a suspense account during the Trial Period.

**SpeedPay:** If you are not in later stages of delinquency, you may also use SpeedPay through any of our phone representatives for free during the Trial Period. To see if you are eligible to make your Trial Period Payments through our SpeedPay service, please call one of our representatives at 800-737-1192.

**Personal e-Billing Services:** If you use third-party billing services (such as your bank s billing service or Checkfree) to pay your mortgage, please be certain to contact them to avoid sending in your regular mortgage payments while you are making your trial payments.

Please utilize the Modification Trial Period Payment Coupons below when mailing your monthly Trial Period Payment.

**If your Trial Period Plan Notice indicates that you might have an escrow shortage:** If you would like to send in the full amount of the escrow shortage shown in your Trial Period Plan Notice, please write a separate check for that amount and indicate in the check s memo field that the payment is for the PROJECTED ESCROW SHORTAGE so that we apply it to your escrow account during the Trial Period instead of recording it as a regular Trial Payment.



Residential Credit Solutions, Inc
P O Box 163229, Fort Worth, Texas 76161-3229

NOTICE: For Hawaii residents only, if you believe your loss mitigation option request has been wrongly denied, you may file a complaint with the state division of financial institutions at division telephone (808) 586-2820 or dfi@dcca.hawaii.gov.

Residential Credit Solutions, Inc. is a debt collector attempting to collect a debt. Any information obtained will be used for that purpose.

Residential Credit Solutions, Inc.    NMLS No. 1514
P.O. Box 163229, Fort Worth, TX 76161-3229
Website: www.residentialcredit.com
Email: ResponseTeam@residentialcredit.com



**RCS**

Residential Credit Solutions, Inc
P O Box 163229, Fort Worth, Texas 76161-3229
Date:    December 21, 2015

RECEIVED

DEC 28 2015

LEEN & O'SULLIVAN, PLLC

Borrower(s):        KULWINDER MUTTI
Mailing Address:    C O LEEN AND O SULLIVAN 520 EAST DENNY WAY  SEATTLE, WA  98122
Property Address:   3230 S 259TH LN  KENT, WA 98032

RE:  Trial Period Plan
     Loan Number: REDACT

Dear KULWINDER MUTTI ,

Attached is the Trial Period Plan that was granted in response to your request for assistance with your loan.

Submitted herewith, you will find the original unexecuted Trial Period Plan. We request that you return to us, if via US Mail, two (2) duplicate original Trial Period Plan(s), each signed and dated. If there are notary provisions at the end or attached, you must sign both copies before a notary public and return the notarized copies to us. Make sure to keep a copy for your records.

We must receive your Trial Period Plan(s), and the $1,555.63 in certified funds or you may submit your first Trial Period Plan payment to RCS, no later than 02/01/2016 or this transaction will be null and void.

Please submit the payment, any other documentation, and/or an executed copy of the Will and/or Heirship, or any other documents concerning the rightful owner of the property, directly to our office at Residential Credit Solutions, Inc. (RCS), 4708 Mercantile Dr., Fort Worth, TX 76137, no later than 02/01/2016 or this transaction will be null and void.

If you prefer to bank wire the funds, please have wired to the following bank account:

     Texas Capital Bank
     2350 Lakeside Blvd Ste. 800
     Richardson, TX 75082
     Routing: 111017979
     Account: 2111019051

Scanned_____

If a faxed copy of the agreement is received, due to time constraints, the two (2) duplicate original Trial Period Plan(s), each signed, dated and notarized (if notary provisions at end or attached) must be received in our office within 24 hours, no later than 02/01/2016.

The physical address for overnight mailing is:

Residential Credit Solutions, Inc. (RCS)
4708 Mercantile Dr.
Fort Worth, TX 76137

If you should have any questions and need to speak with someone at RCS, please feel free to contact us at our toll free number at 800-737-1192. Our Customer Service Representatives are available Monday through Thursday between the hours of 8:00 AM and 7:00 PM, Friday between the hours of 8:00 AM and 5:00 PM Central Standard Time. If you are unable to resolve the issue verbally with our Customer Service Representatives, and you proclaim there is an error on the above- mentioned loan or you have an information request, you may submit an Error Resolution / Information Request to Residential Credit Solutions, Inc. Customer Relations at P.O. BOX 163889 Fort Worth, TX 76161-3289. As an alternative, you may submit requests via facsimile at 888-775-7250. Please make sure to include the loan number and property owner s name, along with a clear statement of your request for review.

If you currently are under the protection of a bankruptcy court with respect to this debt (or if the debt has been discharged in bankruptcy and has not been reaffirmed), this letter is for informational purposes only and is not an attempt to collect, recover, or offset the debt and should not be considered to be a demand for payment or a notice of personal liability. Please consult an attorney if you have any questions about your rights under bankruptcy law. RCS is a debt collector attempting to collect a debt. Any information obtained will be used for that purpose.

Sincerely,

Loss Mitigation Department
Residential Credit Solutions, Inc.

Date: December 21, 2015
Investor Loan Number: REDACT

## MODIFICATION TRIAL PERIOD PLAN
(Step One of Two-Step Documentation Process)

Trial Period Plan Effective Date: 02/01/2016
Borrower ("I/We"):   KULWINDER MUTTI

If there is more than one Borrower or Mortgagor executing this document, each is referred to as "I" For purposes of this document words signifying the singular (such as "I") shall include the plural (such as "we") and vice versa where appropriate.

Lender or Servicer ("Lender"):   Residential Credit Solutions, Inc. (RCS), a Delaware Corporation

Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"):
06/21/2007
Loan Number: REDACTE
Property Address ( Property ):   3230 S 259TH LN KENT, WA 98032

If I am in compliance with this Trial Period Plan (the "Plan") and my representations in Section I continue to be true in all material respects, then the Lender will provide me with a Modification Agreement ("Modification Agreement"), as set forth in Section 3, that would amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents". Capitalized terms used in this Plan and not defined have the meaning given to them in the Loan Documents.

If I have not already done so, I am providing confirmation of the reasons I cannot afford my mortgage payment and documents to perm it verification of all of my i ncome (except that I understand that I am not required to disclose any child support or alimony unless T wish to have such income considered) to determine whether I qualify for the offer described in this Plan (the "Offer") If my loan is in foreclosure, I understand that after I sign and return two copies of this Plan to the Lender, the Lender will send me a signed copy of this Plan if I qualify for the Offer or will send me written notice that I do not qualify for the Offer. If my loan is in foreclosure, this Plan will not take effect unless and until both I and the Lender sign it and Lender provides me with a copy of this Plan with the Lender's signature.

1.   My Representations.  I certify, represent to Lender and agree:

   A.   I am unable to afford my mortgage payments for the reasons indicated in my Hardship Affidavit and as a result, (i) I am either in default or believe I will be in default under the Loan Documents in the near future, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;

   B.   The Property has not been condemned;

   C.   There has been no change in the ownership of the Property since I signed the Loan Documents;

   D.   I am providing or already have provided documentation for all income that I receive (and I understand that I am not required to disclose any child support or alimony that I receive, unless I wish to have such income considered to qualify for the Offer);

   E.   Under penalty of perjury, all documents and information I have provided to Lender pursuant to this Plan, including the documents and information regarding my eligibility for the program, are true and correct; and

   F.   If Lender requires me to obtain credit counseling, I will do so.

2. **The Trial Period Plan.** On or before each of the following due dates, I will pay the Lender the amount set forth below ("Trial Period Payment"), which includes payment for Escrow Items, including real estate taxes, insurance premiums and other fees, if any, of U.S. $1,555.63.

| Trial Period Payment Number | Trial Period Payment | Due Date On or Before |
|---|---|---|
| 1 | $1,555.63 | 02/01/2016 |
| 2 | $1,555.63 | 03/01/2016 |
| 3 | $1,555.63 | 04/01/2016 |

The Trial Period Payment is an estimate of the payment that will be required under the modified loan terms, which will be finalized in accordance with Section 3 below. The actual payments under the modified loan terms, however, may be different

**\*I understand that my first payment and this signed Trial Period Plan must be received by the Lender no later than 02/01/2016 or I may not be accepted into the Modification Program.**

I agree that during the period, (the "Trial Period") commencing on the Trial Period Effective Date and ending on the earlier of: (i) the first day of the month following the month in which the last Trial Period Payment is due (the "Modification Effective Date") or (ii) termination of this Plan, I understand and acknowledge that:

A. TIME IS OF THE ESSENCE under this Plan. This means I must make all payments on or before the days that they are due;

B. Except as set forth in Section 2.C below, the Lender will suspend any scheduled foreclosure sale, provided I continue to meet the obligations under this Plan, but any pending foreclosure action will not be dismissed and may be immediately resumed from the point at which it was suspended if this Plan terminates, and no new notice of default, notice of intent to accelerate, notice of acceleration, or similar notice will be necessaly to continue the foreclosure action. All rights to such notices being hereby waived by me to the extent permitted by applicable law;

C If my property is located in Georgia, Hawaii, Missouri, or Virginia and a foreclosure sale is currently scheduled, the foreclosure sale will not be suspended and the Lender may foreclose if I have not made each and every Trial Period Payment that is due through the end of the month preceding the month in which the foreclosure sale is scheduled to occur. If a foreclosure sale occurs pursuant to this Section 2.C., this agreement shall be deemed terminated;

D. The Lender will hold the payments received during the Trial Period in a non- interest bearing account until they total an amount that is enough to pay my oldest delinquent monthly payment on my loan in full. I understand the Lender will not pay me interest on the amounts held in the account If there is any remaining money after such payment is applied, such remaining funds will be held by the Lender and not posted to my account until they total an amount that is enough to pay the next oldest delinquent monthly payment in full;

E. When the Lender accepts and posts a payment during the Trial Period it will be without prejudice to, and will not be deemed a waiver of, the acceleration of the loan or foreclosure action and related activities and shall not constitute a cure of my default under the Loan. Documents unless such payments are sufficient to completely cure my entire default under the Loan Documents;

F. If prior to the Modification Effective Date, (i) the Lender does not provide me a fully executed copy of this Plan and the Modification Agreement; (ii) I have not made the Trial Period payments required under Section 2 of this Plan; or (iii) the Lender determines that any of my representations in Section 1 were not true and correct as of the date I signed this Plan or are no longer true and correct at any time during the Trial Period; or (iv) I do not provide all information and documentation required by the Lender, the Loan Documents will not be modified and this Plan will terminate. In this event, the Lender will have all of the rights and remedies provided by the Loan Documents, and any payment I make under this Plan shall be applied to amounts I owe under the Loan Documents and shall not be refunded to me; and

G. I understand that the Plan is not a modification of the Loan Documents and that the Loan Documents will not be modified unless and until (i) I meet all of the conditions required for modification, (ii) I receive a fully executed copy of a Modification Agreement, and (iii) the Modification Effective Date has passed. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one

## Modification Trial Payment Coupon

Enclosed is my Trial Period Payment number  3  of  3  Trial Period Payments, due on 04/01/2016.

Trial Period Payment amount required: $1,555.63

Loan number: <span style="background:black;color:red">REDACTE</span>

Please make your check payable to *Residential Credit Solutions* and include your loan number on your check.

Our payment mailing address is:  ATTN: HAMP Payment Processing Center
                                  P.O. BOX 163229
                                  Fort Worth, TX  76161

All payments **must be received** by Residential Credit Solutions no later than the last day of the month in order to be applied for that month.





U.S. Postal Service
CERTIFIED MAIL® RECEIPT
Domestic Mail Only

For delivery information, visit our website at www.usps.com®.

FORT WORTH, TX 7614 CIAL USE

| | |
|---|---|
| Postage | $ $3.45 |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | $2.80 / $0.00 |
| Restricted Delivery Fee (Endorsement Required) | N/A |
| Total Postage & Fees | $ $1.42 |

0233
06 Postmark Here
JAN 20 2016
01/20/2016

Sent To Hamp Payment Processing Center
Street & Apt. No. or PO Box No. P.O. Box 16322 9
City, State, ZIP+4 Fort Worth, TX 76161

PS Form 3800, July 2014        See Reverse for Instructions

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Hamp Payment Processing center
P.O. Box 163229
Fort Worth, TX 76161

9590 9402 1278 5246 1781 42

2. Article Number (Transfer from service label)

7014 1820 0000 8007 9434

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)
C. Date of Delivery
JAN 25 20

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☒ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

---

| 0806949 | 11-24 |
|---|---|
| Office AU # | 1210(8) |

**CASHIER'S CHECK**

SERIAL #: REDACT
ACCOUNT#: REDACTE

Remitter: KULWINDER K MUTTI
Purchaser: KULWINDER K MUTTI
Purchaser Account: REDAC
Operator I.D: u443174
Funding Source: Paper Items(s)         u372282

PAY TO THE ORDER OF ***RESIDENTIAL CREDIT SOLUTIONS ***

January 20, 2016

***One thousand five hundred fifty-five dollars and 63 cents***

**$1,555.63**

Payee Address:
Memo: LOAN # 2200080614

WELLS FARGO BANK, N.A.
204 W MEEKER ST
KENT, WA 98032
FOR INQUIRIES CALL (480) 394-3122

NOTICE TO PURCHASER–IF THIS INSTRUMENT IS LOST, STOLEN OR DESTROYED, YOU MAY REQUEST CANCELLATION AND REISSUANCE. AS A CONDITION TO CANCELLATION AND REISSUANCE, WELLS FARGO & COMPANY MAY IMPOSE A FEE AND REQUIRE AN INDEMNITY AGREEMENT AND BOND

VOID IF OVER US $ 1,555.63

**NON-NEGOTIABLE**

**Purchaser Copy**

FB004    50211975



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

FORT WORTH, TX 76141

| | |
|---|---|
| Postage | $ $3.45 |
| Certified Fee | $3.30 | 0233 |
| Return Receipt Fee (Endorsement Required) | $2.80 | 08 Postmark Here |
| Restricted Delivery Fee (Endorsement Required) | N/A |
| Total Postage & Fees | $ $9.19 | 02/23/2016 |

Sent To
Attn: HAMP PAYMENT PROCESSING Center
Street & Apt. No., or PO Box No. P.O. BOX 163229
City, State, ZIP+4 Fort Worth, TX 76161

6579
8008
0000
1820
7014

---

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Attn: HAMP PAyment Processing Center

P.O. BOX 163229
Fort Worth, TX 76161

9590 9402 1204 5246 3689 13

2. Article Number (Transfer from service label)

7014 1820 0000 8008 6578

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X ☐ Agent ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

FEB 2 6 2016

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053    Domestic Return Receipt

---

0006949    11-24
Office AU #    1210(8)

Remitter: KULWINDER KAUR MUTTI
Purchaser: SHARAN KIRPAL SINGH
Purchaser Account: <span style="background:black;color:white">REDACTED</span>
Operator I.D.: wash9010
Funding Source: Paper Items(s)

PAY TO THE ORDER OF    ***RESIDENTIAL CREDIT SOLUTIONS***

**CASHIER'S CHECK**

SERIAL #: <span style="background:black;color:white">REDACTED</span>
ACCOUNT #: <span style="background:black;color:white">REDACTED</span>

February 23, 2016

***One thousand five hundred fifty-five dollars and 63 cents***    **$1,555.63**

Payee Address:
Memo    RE: 2200080614

WELLS FARGO BANK, N.A.
204 W MEEKER ST
KENT, WA 98032
FOR INQUIRIES CALL (480) 394-3122

NOTICE TO PURCHASER–IF THIS INSTRUMENT IS LOST,
STOLEN OR DESTROYED. YOU MAY REQUEST CANCELLATION
AND REISSUANCE. AS A CONDITION TO CANCELLATION AND
REISSUANCE, WELLS FARGO & COMPANY MAY IMPOSE A
FEE AND REQUIRE AN INDEMNITY AGREEMENT AND BOND

VOID IF OVER US $ 1,555.63

**NON-NEGOTIABLE**

**Purchaser Copy**

FB004    w4203 50211976



**U.S. Postal Service™**
**CERTIFIED MAIL® RECEIPT**
*Domestic Mail Only*

For delivery information, visit our website at www.usps.com®.

FORT WORTH TX 76161 **FICIAL USE**

| | |
|---|---|
| Postage | $ $3.45 |
| Certified Fee | $3.30 |
| Return Receipt Fee (Endorsement Required) | $0.00 |
| Restricted Delivery Fee (Endorsement Required) | N/A |
| Total Postage & Fees | $ $7.30 |

Sent To *HAMP Payment Proc'ss'ng Centre*
Street & Apt. No., or PO Box No. *PoBox 163225*
City, State, ZIP+4 *Fort worth TX 76161*

PS Form 3800, July 2014

See Reverse for Instructions

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

*Hamp Payment Processing Centre*
*PoBox 163229*
*Fort worth TX 76161*

9590 9402 1204 5246 4042 22

2. Article Number (Transfer from service label)

7014 1820 0000 8009 9364

PS Form 3811, July 2015 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X _____ ☐ Agent
☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
MAR 30 2016

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

Domestic Return Receipt

---

| | | |
|---|---|---|
| 0006949 | 11-24 | |
| Office AU # | 1210(8) | |

Remitter: **KIRPAL S MUTTI**
Purchaser: **KIRPAL S MUTTI**
Purchaser Account: REDACTED
Operator I.D.: u216033   u216033
Funding Source: Paper Items(s)
PAY TO THE ORDER OF

## CASHIER'S CHECK

SERIAL #: REDACTED
ACCOUNT#: REDACTED

March 28, 2016

***RESIDENTIAL CREDIT COLUTIONS***
***REF: LOAN # 2200080614***

***One thousand five hundred fifty-five dollars and 63 cents***

Payee Address:
Memo:

**WELLS FARGO BANK, N.A.**
204 W MEEKER ST
KENT, WA 98032
FOR INQUIRIES CALL (480) 394-3122

NOTICE TO PURCHASER--IF THIS INSTRUMENT IS LOST,
STOLEN OR DESTROYED, YOU MAY REQUEST CANCELLATION
AND REISSUANCE. AS A CONDITION TO CANCELLATION AND
REISSUANCE, WELLS FARGO & COMPANY MAY IMPOSE A
FEE AND REQUIRE AN INDEMNITY AGREEMENT AND BOND.

**\*\*$1,555.63\*\***

VOID IF OVER US $ 1,555.63

**NON-NEGOTIABLE**

## Purchaser Copy

FB004   MAX1 50711978

DITECH FINANCIAL LLC

## PO BOX 6172
## RAPID CITY, SD 57709-6172
## 1-877-624-8026

| P5111-496-4 | CUSTOMER ACCOUNT ACTIVITY STATEMENT | DATE 01/14/17 |
|---|---|---|
| LSS ID RUSP011617 | | PAGE 01 |

KULWINDER MUTTI                    ACCOUNT HISTORY FROM MARIX SERVICING, LLC

520 EAST DENNY WAY

3230 S 259TH LN

KENT                    WA 98032

3230 S 259TH LN

KENT                    WA 98032

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

------------------------- CURRENT ACCOUNT INFORMATION -------------------------

| LOAN NUMBER | DATE DUE | TOTAL PAYMENT AMOUNT | PRINCIPAL & INTEREST PAYMENT | LOAN INTEREST RATE | CURRENT PRINCIPAL BALANCE | ESCROW BALANCE |
|---|---|---|---|---|---|---|
| REDACTED | 08-01-12 | 1236.73 | 853.85 | 2.00000 | 270,721.07 | 19,363.20- |
| 2ND MORTGAGE: | | | 0.00 | 0.00000 | 6,038.82 | |
| REST ESC BAL | | | | | | NEW SERV LN # |
| 0.00 | | | | | | REDACTED |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

ACTIVITY FOR PERIOD 01-13-15 - 01-14-17

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | EFFECTIVE DATE OF TRANSACTION |
|---|---|---|---|---|

------------------------------------------------------------------------------

| TRANSACTION AMOUNT | PRIN PD/ BALANCE | INTEREST | ESCROW PD/ BALANCE | AMOUNT | -------------OTHER------------- CODE/DESCRIPTION |
|---|---|---|---|---|---|

```
----------------------------------------------------------------------------
12-22-16  00-00  632  CORPORATE ADVANCE DISBURSEMENT

         0.46      0.00      0.00      0.00          FC COURT COSTS

                                             7,765.95   MREC BAL

12-22-16  00-00  630  CORPORATE ADVANCE DISBURSEMENT

       405.00      0.00      0.00      0.00          FC ATTY FEES

                                             7,765.49   MREC BAL

12-16-16  08-12  152  LATE CHARGE ASSESSMENT

         0.00      0.00      0.00      0.00     56.89-1 LATE CHARGES

                                             1,770.81 1 BAL LATE CHARGES

12-01-16  08-12  161  ESCROW ADVANCE

       759.00      0.00      0.00    759.00

12-01-16  12-16  351  HAZARD INSURANCE

       759.00-     0.00      0.00    759.00-

              270,721.07           19,363.20-  NEW PRINCIPAL/ESCROW BALANCES

11-16-16  08-12  152  LATE CHARGE ASSESSMENT

         0.00      0.00      0.00      0.00     56.89-1 LATE CHARGES

                                             1,713.92 1 BAL LATE CHARGES
```

~

DITECH FINANCIAL LLC

PO BOX 6172

RAPID CITY, SD 57709-6172

1-877-624-8026

KULWINDER MUTTI

LOAN NUMBER: REDACTED

ACTIVITY FOR PERIOD 01-13-15 - 01-14-17

| PROCESS DATE | DUE DATE | TRANSACTION CODE | TRANSACTION DESCRIPTION | EFFECTIVE DATE OF TRANSACTION |
|---|---|---|---|---|

TRANSACTION  PRIN PD/          ESCROW PD/ --------------OTHER-------------

```
        AMOUNT    BALANCE    INTEREST   BALANCE    AMOUNT   CODE/DESCRIPTION
-----------------------------------------------------------------------------
11-14-16  00-00  632  CORPORATE ADVANCE DISBURSEMENT

        1,139.84      0.00       0.00       0.00              FC COURT COSTS

                                                   7,360.49   MREC BAL

10-24-16  08-12  161  ESCROW ADVANCE

        1,983.55      0.00       0.00   1,983.55

10-24-16  10-16  312  COUNTY TAX

        1,983.55-     0.00       0.00   1,983.55-

              270,721.07             18,604.20-  NEW PRINCIPAL/ESCROW BALANCES

10-17-16  08-12  152  LATE CHARGE ASSESSMENT

        0.00          0.00       0.00       0.00   56.89-1 LATE CHARGES

                                                   1,657.03 1 BAL LATE CHARGES

09-16-16  08-12  152  LATE CHARGE ASSESSMENT

        0.00          0.00       0.00       0.00   56.89-1 LATE CHARGES

                                                   1,600.14 1 BAL LATE CHARGES

08-23-16  08-12  173  PAYMENT

        0.00          0.00       0.00       0.00   976.27 *

                                                   976.27-  SUSPENSE

                                                     0.00   SUSP-BAL

08-23-16  00-00  745  RESTRICTED CORPORATE ADVANCE ADJUSTMENT

        976.27-       0.00       0.00       0.00              FUND CORP ADV

                                                   6,220.65   MREC BAL

08-16-16  08-12  152  LATE CHARGE ASSESSMENT

        0.00          0.00       0.00       0.00   56.89-1 LATE CHARGES

                                                   1,543.25 1 BAL LATE CHARGES

07-16-16  08-12  152  LATE CHARGE ASSESSMENT

        0.00          0.00       0.00       0.00   49.60-1 LATE CHARGES

                                                   1,486.36 1 BAL LATE CHARGES

04-05-16  07-12  173  PAYMENT

        0.00          0.00       0.00       0.00

04-05-16  07-12  168  REPAY OF ESCROW ADVANCE

        0.00          0.00       0.00     382.88-  382.88

04-05-16  07-12  173  PAYMENT                                         04-02-16
```

```
      0.00      401.98     451.87    382.88  1,236.73-  SUSPENSE

                                              976.27  SUSP-BAL

            270,721.07              16,620.65-  NEW PRINCIPAL/ESCROW BALANCES

            6,038.82                            NEW PRINCIPAL/ESCROW BALANCES
```

DITECH FINANCIAL LLC

PO BOX 6172

RAPID CITY, SD 57709-6172

1-877-624-8026

KULWINDER MUTTI

LOAN NUMBER: REDACTED

ACTIVITY FOR PERIOD 01-13-15 - 01-14-17

| PROCESS | DUE | TRANSACTION | | TRANSACTION | | EFFECTIVE DATE |
|---------|-----|-------------|--|-------------|--|----------------|
| DATE | DATE | CODE | | DESCRIPTION | | OF TRANSACTION |

TRANSACTION  PRIN PD/          ESCROW PD/ -------------OTHER-------------

AMOUNT    BALANCE    INTEREST  BALANCE    AMOUNT  CODE/DESCRIPTION

```
04-05-16  07-12  173  PAYMENT                                          04-02-16

      1,555.63     0.00      0.00      0.00  1,555.63  SUSPENSE

                                            2,213.00  SUSP-BAL

04-02-16  06-12  173  PAYMENT

      0.00      0.00      0.00      0.00

04-02-16  06-12  168  REPAY OF ESCROW ADVANCE

      0.00      0.00      0.00    382.88-   382.88

04-02-16  06-12  173  PAYMENT                                          02-29-16

      0.00      401.31     452.54    382.88  1,236.73-  SUSPENSE

                                              657.37  SUSP-BAL

            271,123.05              17,003.53-  NEW PRINCIPAL/ESCROW BALANCES

            6,038.82                            NEW PRINCIPAL/ESCROW BALANCES
```

03-30-16  06-12  161  ESCROW ADVANCE

    1,983.55      0.00     0.00  1,983.55

03-30-16  04-16  312  COUNTY TAX

    1,983.55-    0.00     0.00  1,983.55-

         271,524.36        17,386.41-  NEW PRINCIPAL/ESCROW BALANCES

03-01-16  06-12  172  PAYMENT                                      02-29-16

    1,555.63      0.00    0.00    0.00  1,555.63  SUSPENSE

                                   1,894.10  SUSP-BAL

03-01-16  06-12  143  PRINCIPAL BALANCE DATA

        0.00  6,038.82-    0.00    0.00

         271,524.36               NEW PRINCIPAL/ESCROW BALANCES

           6,038.82               NEW PRINCIPAL/ESCROW BALANCES

03-01-16  06-12  143  PRINCIPAL BALANCE DATA

        0.00  6,038.82    0.00    0.00

         271,524.36               NEW PRINCIPAL/ESCROW BALANCES

02-26-16  00-00  745  RESTRICTED CORPORATE ADVANCE ADJUSTMENT

     455.00      0.00    0.00    0.00        FC ATTY FEES

                               7,196.92  MREC BAL

02-26-16  00-00  745  RESTRICTED CORPORATE ADVANCE ADJUSTMENT

       0.92      0.00    0.00    0.00

                             6,741.92  MREC BAL

02-26-16  00-00  745  RESTRICTED CORPORATE ADVANCE ADJUSTMENT

    1,314.00      0.00    0.00    0.00        TITLE SEARCH

                             6,741.00  MREC BAL

DITECH FINANCIAL LLC

PO BOX 6172

RAPID CITY, SD 57709-6172

1-877-624-8026

ACTIVITY FOR PERIOD 01-13-15 - 01-14-17

| PROCESS DATE | DUE DATE | TRANSACTION CODE | | TRANSACTION DESCRIPTION | EFFECTIVE DATE OF TRANSACTION |
|---|---|---|---|---|---|

| TRANSACTION AMOUNT | PRIN PD/ BALANCE | INTEREST | ESCROW PD/ BALANCE | AMOUNT | ------------OTHER------------ CODE/DESCRIPTION |
|---|---|---|---|---|---|

02-26-16  00-00  745  RESTRICTED CORPORATE ADVANCE ADJUSTMENT

|  | 10.00 | 0.00 | 0.00 | 0.00 | | INSPECTION |
|---|---|---|---|---|---|---|
|  |  |  |  |  | 5,427.00 | MREC BAL |

02-26-16  00-00  745  RESTRICTED CORPORATE ADVANCE ADJUSTMENT

|  | 165.00 | 0.00 | 0.00 | 0.00 | | |
|---|---|---|---|---|---|---|
|  |  |  |  |  | 5,417.00 | MREC BAL |

02-26-16  00-00  745  RESTRICTED CORPORATE ADVANCE ADJUSTMENT

|  | 562.50 | 0.00 | 0.00 | 0.00 | | |
|---|---|---|---|---|---|---|
|  |  |  |  |  | 5,252.00 | MREC BAL |

02-26-16  00-00  745  RESTRICTED CORPORATE ADVANCE ADJUSTMENT

|  | 165.00 | 0.00 | 0.00 | 0.00 | | |
|---|---|---|---|---|---|---|
|  |  |  |  |  | 4,689.50 | MREC BAL |

02-26-16  00-00  745  RESTRICTED CORPORATE ADVANCE ADJUSTMENT

|  | 3,330.50 | 0.00 | 0.00 | 0.00 | | |
|---|---|---|---|---|---|---|
|  |  |  |  |  | 4,524.50 | MREC BAL |

02-26-16  00-00  745  RESTRICTED CORPORATE ADVANCE ADJUSTMENT

|  | 1,179.00 | 0.00 | 0.00 | 0.00 | | |
|---|---|---|---|---|---|---|
|  |  |  |  |  | 1,194.00 | MREC BAL |

02-26-16  00-00  745  RESTRICTED CORPORATE ADVANCE ADJUSTMENT

|  | 15.00 | 0.00 | 0.00 | 0.00 | | INSPECTION |
|---|---|---|---|---|---|---|
|  |  |  |  |  | 15.00 | MREC BAL |

02-24-16  06-12  145  ADJUSTMENT

|  | 0.00 | 0.00 | 0.00 | 0.00 | 15,402.86 | |
|---|---|---|---|---|---|---|

02-24-16  06-12  143  PRINCIPAL BALANCE DATA

|  | 0.00 | 6,038.82- | 0.00 | 0.00 | | |
|---|---|---|---|---|---|---|
|  |  | 271,524.36 |  |  | NEW PRINCIPAL/ESCROW BALANCES | |

```
                    6,038.82                              NEW PRINCIPAL/ESCROW BALANCES

02-23-16  06-12  170  PAYMENT
        15,402.86        0.00        0.00        0.00 15,402.86   SUSPENSE
                                                      338.47   SUSP-BAL

02-22-16  06-12  170  PAYMENT
         5,402.87-       0.00        0.00        0.00  5,402.87-  SUSPENSE
                                                   15,064.39-  SUSP-BAL

02-22-16  06-12  170  PAYMENT
         9,661.52-       0.00        0.00        0.00  9,661.52-  SUSPENSE
                                                    9,661.52-  SUSP-BAL
```

~

DITECH FINANCIAL LLC

PO BOX 6172

RAPID CITY, SD 57709-6172

1-877-624-8026

KULWINDER MUTTI

LOAN NUMBER: REDACTED

ACTIVITY FOR PERIOD 01-13-15 - 01-14-17

| PROCESS | DUE | TRANSACTION | | TRANSACTION | | EFFECTIVE DATE |
|---------|------|-------------|--|-------------|--|----------------|
| DATE | DATE | CODE | | DESCRIPTION | | OF TRANSACTION |

| TRANSACTION | PRIN PD/ | | | ESCROW PD/ -------------OTHER------------- | |
|-------------|----------|--|--|------------|--|
| AMOUNT | BALANCE | INTEREST | BALANCE | AMOUNT | CODE/DESCRIPTION |

```
02-22-16  06-12  132  FEE/LATE CHARGE ADJUSTMENT
         0.00        0.00        0.00        0.00  1,436.76-1 LATE CHARGES
                                                1,436.76 1 BAL LATE CHARGES

02-22-16  06-12  142  LOAN SETUP
         0.00 271,524.36-       0.00        0.00
              271,524.36                              NEW PRINCIPAL/ESCROW BALANCES
```

 **ditech.**

PO Box 6172, Rapid City, SD 57709-6172

# BILLING STATEMENT

| Statement Date | Due Date | **Amount Due** |
|---|---|---|
| 08/16/2016 | 09/01/2016 | **$65,605.03** |

If payment is received after 09/16/2016, a **$56.89** late fee will be charged

3-770-04825-0004342-001-1-001-000-000-000
վիրեվիններ, վիննեն, երբեն, բերեն, ներ, կանին, ներ

 KULWINDER MUTTI
520 EAST DENNY WAY
3230 S 259TH LN
KENT WA 98032-9758

 AutoPay is Free Online at Ditech.com

 Mail your payment to
PO Box 7169
Pasadena, CA 91109-7169

☎ Call 1-800-643-0202
Monday - Friday, 7a.m. - 8 p.m. CST
Saturday, 7a.m. - 1 p.m. CST

## Account Information

| | |
|---|---|
| Loan Number | **REDACT** |
| Principal Balance † | $270,721.07 |
| Escrow Balance | ($16,620.65) |
| Deferred Balance | $6,038.82 |
| Advance Balance ^ | $7,196.92 |
| Funds in Suspense Balance | $976.27 |
| Interest Rate | 4.000% |
| Interest Type | Actuarial |
| Prepayment Penalty | No |
| Next Rate Reset | 08/2017 |
| Property Address: | |
| | 3230S 259TH LN |
| | KENT WA 98032 |

† This is not your payoff amount. Please login to MyAccount at ditech.com for a payoff figure.

## Past Payments Breakdown

| Since Last Statement/Month | |
|---|---|
| Principal | $0.00 |
| Interest | $0.00 |
| Escrow (Tax & Insurance) | $0.00 |
| Total Fees and Charges | $0.00 |
| Funds in Suspense | $0.00 |
| Total Paid | $0.00 |
| **Year to Date** | |
| Principal | $803.29 |
| Interest | $904.41 |
| Escrow (Tax & Insurance) | $765.76 |
| Total Fees and Charges | $0.00 |
| Funds in Suspense | $976.27 |
| Total Paid Year to Date | $3,449.73 |

## Explanation of Amount Due

| | |
|---|---|
| Principal | $300.41 |
| Interest | $837.36 |
| Escrow (Tax & Insurance) | $382.88 |
| Regular Monthly Payment | $1,520.65 |
| Total New Fees and Charges | $56.89 |
| Past Due Amount | $64,027.49 |

## Transaction Activity Since Last Statement

| Date | Description | Charges | Payments |
|---|---|---|---|
| 08/16/16 | Late Charge Asmt | $56.89 | $0.00 |

## Total Amount Due: $65,605.03

### **Delinquency Notice**

You are late on your mortgage payments. Failure to bring your loan current may result in fees and foreclosure - the loss of your home. As of August 16, you are 1476 days delinquent on your mortgage loan. Your account first became delinquent on 05/01/2012

Recent Account History
- Payment Due 03/01/16: Unpaid amount of $1,374.85
- Payment Due 04/01/16: Unpaid amount of $1,374.85
- Payment Due 05/01/16: Unpaid amount of $1,374.85
- Payment Due 06/01/16: Unpaid amount of $1,374.85
- Payment Due 07/01/16: Unpaid amount of $1,374.85
- Payment Due 08/01/16: Unpaid amount of $1,520.65
-Total: $65,605.03 due. You must pay this amount to bring your loan current.

For a list of homeownership counselors or counseling organizations in your area, go to http://www.hud.gov/offices/hsg/sfh/hcc/hcs.cfm or call 800-569-4287

## Important Messages (More Information on the Back)

^Advances represent money advanced by servicer to pay taxes, insurance and any other amounts currently due that are not part of an escrow account.

Your account is now severely delinquent and your immediate action is required. Contact your account representative, Lilliana G at 1-800-643-0202, extension 31607 to make immediate payment arrangements.

---

✂ - - - - - - - - - - **PLEASE DETACH AND RETURN THIS PORTION WITH YOUR PAYMENT** - - - - - - - - - - ✂

KULWINDER MUTTI
520 EAST DENNY WAY
3230 S 259TH LN
KENT WA 98032-9758

☐ Check box for address changes on reverse side.

Make checks payable to Ditech Financial.

| | | |
|---|---|---|
| Amount Due | $ | 6 5 , 6 0 5 . 0 3 |
| Additional Escrow | $ | , . |
| Additional Late | $ | , . |
| Additional Principal | $ | , . |
| Total Amount Enclosed | $ | , . |

| Loan Number | Statement Date | Due Date | **Amount Due** |
|---|---|---|---|
| **REDACT** | 08/16/2016 | 09/01/2016 | **$65,605.03** |

If payment is received after 09/16/2016, a **$56.89** late fee will be charged

Ditech
PO Box 7169
Pasadena, CA 91109-7169

00379068 0    00152065    0006560503

# EXHIBIT H

USPS Tracking Information

Cawood K. Bebout WSBA #34904
1023 S. 3rd St., Mount Vernon, WA 98273
Office (360) 419-3196; Fax (360) 336-1962
bebout@fidalgo.net

**ALERT: AS OF APRIL 30, USPS.COM WILL NO LONGER SUPPORT OUTDATED BROWSERS. TO…**

# USPS Tracking®

**FAQs ›** **(http://faq.usps.com/?articleId=220900)**

## Track Another Package ➕

**Tracking Number:** 70142120000306673679

Remove ✕

Your item has been delivered to an agent at 8:43 am on April 2, 2018 in IRVINE, CA 92619.

## ⊘ Delivered

April 2, 2018 at 8:43 am
Delivered, To Agent
IRVINE, CA 92619

**Get Updates** ⌄

---

**Text & Email Updates**                                                                     ⌄

---

**Tracking History**                                                                           ⌄

---

**Product Information**                                                                       ⌄

---

## See Less ⌃



# Can't find what you're looking for?

Go to our FAQs section to find answers to your tracking questions.

## FAQs (http://faq.usps.com/?articleId=220900)

**The easiest tracking number is the one you don't have to know.**

With Informed Delivery®, you never have to type in another tracking number. Sign up to:

- See images* of incoming mail.

- Automatically track the packages you're expecting.

- Set up email and text alerts so you don't need to enter tracking numbers.

- Enter USPS Delivery Instructions™ for your mail carrier.

**Sign Up**

**(https://reg.usps.com/entreg/RegistrationAction_input?**

*NOTE: Black and white (grayscale) images show the outside, front of letter-sized envelopes and mailpieces that are processed through USPS automated equipment.

**app=UspsTools&appURL=https%3A%2F%2Ftools.usps.com%2Fg**




# EXHIBIT I

Rushmore Letter

April 9, 2018

Cawood K. Bebout WSBA #34904
1023 S. 3rd St., Mount Vernon, WA 98273
Office (360) 419-3196; Fax (360) 336-1962
bebout@fidalgo.net



15480 Laguna Canyon Road
Suite 100
Irvine, CA 92618
888.699.5600 toll free
949.341.0777 local
949.341.2200 fax
www.rushmorelm.com

April 9, 2018

Dann Law
P.O. Box 6031040
Cleveland, OH 44103
Attn: Whitney E. Kaster

RE: Mortgagor(s) – Kulwinder Mutti
Property Address – 3230 S. 259th Lane, Kent WA 98032
Loan Number – REDACTED

Dear Whitney E. Kaster:

Rushmore Loan Management Services LLC (Rushmore) is in receipt of your correspondence dated March 27, 2018, and received by our office April 2, 2018, regarding the mortgage loan account referenced above. We appreciate you bringing this matter to our attention, as we take all inquiries from our customers very seriously.

Your correspondence is currently under review. We realize the urgency of your inquiry, and we appreciate your patience. We will have a response issued to you within 30 business days.

Furthermore, our records indicate Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as trustee for Pretium Mortgage Acquisition Trust is the current owner of the Note. The address of the owner of the loan is as follows:

Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as trustee for Pretium Mortgage Acquisition Trust
500 Delaware Avenue 11th Floor
Wilmington, DE 19807

At Rushmore, customer concerns are important to us. Should you have any questions, please contact:

Customer Service Department
Monday through Thursday, 6:00 a.m. to 7:00 p.m. Pacific /Friday, 6:00 a.m. to 6:00 p.m. Pacific
Toll-free number: 1.888.504.6700

Sincerely,
Customer Correspondence Department

By Certified Mail 7016 0910 0002 2397 4803

Rushmore Loan Management Services is a debt collector, who is attempting to collect a debt. Any information obtained will be used for that purpose. If this debt is in or has been discharged in a bankruptcy proceeding, be advised this communication is not an attempt to collect the debt against you. Please note, however, we reserve the right to exercise the legal rights only against the property securing the original obligation.



**RUSHMORE**
LOAN MANAGEMENT
S E R V I C E S ®

P.O. Box 55004
Irvine, CA 92619

**Address Service Requested**

CERTIFIED MAIL

7016 0910 0002 2397 4803

4410388000 B010

FIRST-CLASS MAIL

$06.67¢

06.06.2018

ZIP 92618
011D11645352

# EXHIBIT J

Rushmore Letter

May 14, 2018

Cawood K. Bebout WSBA #34904
1023 S. 3rd St., Mount Vernon, WA 98273
Office (360) 419-3196; Fax (360) 336-1962
bebout@fidalgo.net



15480 Laguna Canyon Road
Suite 100
Irvine, CA 92618
888.699.5600 toll free
949.341.0777 local
949.341.2200 fax
www.rushmorelm.com

May 14, 2018

Dann Law Firm
P.O. Box 6031040
Cleveland, OH 44103
Attn: Whitney E. Kaster

RE:     Mortgagor(s) – Kulwinder Mutti
        Property Address – 3230 S. 259th Lane, Kent WA 98032
        Loan Number – REDACTED

Dear Whitney E. Kaster:

Rushmore Loan Management Services LLC ("Rushmore") is in receipt of your correspondence dated March 27, 2018, which was received by our office on April 2, 2018, regarding the mortgage loan account referenced above.

Please note that Rushmore is the servicer of the loan and that the owner of the loan is Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as trustee for Pretium Mortgage Acquisition Trust. The servicing responsibilities for the loan transferred from Ditech to Rushmore effective January 16, 2017. We appreciate the opportunity to provide you with this written response.

Rushmore did not receive a modification package on or around December 18, 2017. Yadhira Lomeli has been the Single Point of Contact since February 2, 2017.

On February 21, 2018, Rushmore received a modification package, but it was incomplete. A letter was sent to your client advising what documents were needed to complete the modification package. We still need the following documents:

- December 2017 and January 2018 Profit and Loss Statements. These statements must be signed and dated.
- December 2017 and January 2018 Business Bank Statements
- Fully Executed Contributor letter from Kirpal

Please note a complete package must be received must be received greater than thirty-seven days prior to the scheduled foreclosure sale date (if loan is an active foreclosure). If the property is

Rushmore Loan Management Services is a debt collector, who is attempting to collect a debt. Any information obtained will be used for that purpose. If this debt is in or has been discharged in a bankruptcy proceeding, be advised this communication is not an attempt to collect the debt against you. Please note, however, we reserve the right to exercise the legal rights only against the property securing the original obligation.





15480 Laguna Canyon Road
Suite 100
Irvine, CA 92618
888.699.5600 toll free
949.341.0777 local
949.341.2200 fax
www.rushmorelm.com

located in the state of Minnesota a complete application must be received 7 business days or more prior to the scheduled Foreclosure sale date.

On February 23, 2018, Rushmore received additional documents, but they were illegible. The following documents are still required to complete a loan modification review:

- Contribution Letter with amount of contribution from Kirpal
- December 2017 and January 2018 Signed Profit and Loss Statement
- December 2017 and January 2018 Business Bank Statements

Rushmore attempted to contact your client for the additional missing items on the following dates:

- March 8, 2018, Rushmore representative called (202) 542-6444 and left a message
- March 21, 2018, Rushmore representative called (202) 542-6444, but was unable to leave a message
- March 22, 2018, Rushmore representative called (202) 542-6444 and left a message

On March 22, 2018, Rushmore sent a Loan Modification Denial Letter because we were unable to obtain a complete package to review.

Your requests for credit reporting changes and monetary compensation are respectfully denied as Rushmore has determined that no error occurred on the account.

As of the date of this correspondence, the account is 70 payments delinquent and contractually due for the August 1, 2012 monthly installment. If you would like to discuss available payment assistance options, please call the assigned representative:

Single Point of Contact (SPOC):
Name: Yadhira Lomeli
Direct Number: 949-341-5672

Should you have any additional questions, please do not hesitate to contact us.

Loss Mitigation Department
Monday through Thursday, 6:00 a.m. to 7:00 p.m. Pacific
Friday, 6:00 a.m. to 6:00 p.m. Pacific
Toll-free number 1.888.504.7300

Rushmore Loan Management Services is a debt collector, who is attempting to collect a debt. Any information obtained will be used for that purpose. If this debt is in or has been discharged in a bankruptcy proceeding, be advised this communication is not an attempt to collect the debt against you. Please note, however, we reserve the right to exercise the legal rights only against the property securing the original obligation.





15480 Laguna Canyon Road
Suite 100
Irvine, CA 92618
888.699.5600 toll free
949.341.0777 local
949.341.2200 fax
www.rushmorelm.com

Sincerely,


Customer Correspondence Department
Rushmore Loan Management Services LLC

By Certified Mail

Rushmore Loan Management Services is a debt collector, who is attempting to collect a debt. Any information obtained will be used for that purpose. If this debt is in or has been discharged in a bankruptcy proceeding, be advised this communication is not an attempt to collect the debt against you. Please note, however, we reserve the right to exercise the legal rights only against the property securing the original obligation.



Dann Law Firm
P.O. Box 6031040
Cleveland, OH 44103
Attn: Whitney E. Kaster



**USHMORE**
N MANAGEMENT
S U C C E S S

P.O. Box 55004
Irvine, CA 92619

dress Service Requested



CERTIFIED MAIL®

7017 0190 0000 6658 8260

Master
06/14/2018
US POSTAGE $006.88

ZIP 75234
011D11649543

