U.S. District Court Judge Ricardo S. Martinez

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON AT SEATTLE**

| | |
|---|---|
| KULWINDER MUTTI AND KIRPAL MUTTI,<br><br>                Plaintiffs,<br><br>vs.<br><br>RUSHMORE LOAN MANAGEMENT SERVICES, LLC, AND WILMINGTON SAVINGS FUND SOCIETY, FSB, D/B/A CHRISTIANA TRUST, NOT INDIVIDUALLY BUT AS TRUSTEE FOR PETIUM MORTGAGE ACQUISITION TRUST,<br><br>                Defendants. | Case No.: 2:18-cv-00884-RSM<br><br>**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

Kulwinder Mutti and Kirpal Mutti (collectively, "Plaintiffs"), through counsel, for their response in opposition to Defendants' Motion for Summary Judgment (Dkt. 21, the "Motion"), state:

**I.    STATEMENT OF FACTS**

The gravamen of this case is that Plaintiffs sought a mortgage loan modification in 2015.[1] They were approved for a trial payment plan ("TPP") by a prior servicer, Residential Credit Solutions ("RCS"), which required three payments in February-April, 2016.[2] The loan was transferred to another servicer, Ditech, while Plaintiffs were making the required payments.[3] After Plaintiffs completed the TPP payments, Ditech failed to send Plaintiffs a permanent loan modification.[4] The loan was then transferred to Defendant Rushmore.[5] Defendants do not deny any of these factual allegations.[6] When Plaintiffs' counsel sent Rushmore a notice of error raising the fact that no permanent modification had been offered following the TPP, Rushmore failed to investigate and/or correct that error.[7]

The Motion correctly notes that these facts are largely not in dispute. The Motion, however, raises a new fact that is in dispute - that Plaintiffs had been offered a permanent modification by Ditech and had not accepted it.[8] Plaintiffs dispute that they received the Loan Modification Agreement[9] and the letter dated August 22, 2017, or any written communication from their mortgage loan servicer offering to them a permanent loan modification.[10] This case centers on that central fact - Plaintiffs contend that they sought loss mitigation when they fell behind on their mortgage payments, that they were approved for a trial payment plan ("TPP"),

---

[1] See [Dkt. 1] Complaint, ¶¶ 20-21.
[2] Id. at ¶¶ 22-23.
[3] Id. at ¶¶ 26-29.
[4] Id. at ¶ 30.
[5] Id. at ¶ 29.
[6] See [Dkt. 20] Answer, ¶ 11.
[7] See [Dkt. 1] Complaint, ¶¶ 33-40.
[8] See [Dkt. 21] Motion, at p. 3.
[9] Exhibit 7 to Declaration of Roberto Montoya ("Montoya Declaration") in Support of Motion for Summary Judgment (Dkt. 23-7) or the August 22, 2017 letter attached as Exhibit 8 to the Montoya Declaration (Dkt. 23-8).
[10] See Declaration of Plaintiffs, ¶¶ 4-6; [Dkt. 1] Complaint, ¶¶ 20-30.

PLAINTIFFS' RESPONSE IN
OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
Case No.: 3:18-cv-00884-RSM                           2

Cawood K. Bebout
1023 S. 3rd Street, Mount Vernon, WA 98273
(360) 419-3196

made each of the required payments but were never offered a permanent loan modification.[11] Importantly, Defendants' answer does not deny these factual allegations.[12] Rather, Defendants attach a Loan Modification Agreement as Exhibit 7 to the Montoya Declaration[13] and a letter dated August 22, 2016 claiming that the modification documents had not been returned.[14] Yet nothing in the Montoya Declaration or the Defendants' answer claims that either document was ever sent by the Defendants, or any prior servicer, or that the Plaintiffs actually received either document. No tracking information has been provided. The Defendants' Motion, Answer and the Montoya Declaration are all devoid of any factual allegation that either document was actually sent to or received by Plaintiffs. Given that no evidence counters the Plaintiffs' claim that neither document was received, this fact alone defeats Defendants' Motion.[15]

Moreover, there also is no dispute that the response[16] Rushmore provided to Plaintiffs' notice of error[17] did not actually respond in any way to the error raised. That response was apparently directed to a subsequent modification application that Plaintiffs had submitted to Rushmore and which is NOT at issue in this case. Careful examination of that response, Exhibit J to the Complaint, reveals this to be the case. The third paragraph of Rushmore's response

---

[11] See [Dkt. 1] Complaint, ¶¶ 20-30; Declaration of Plaintiffs, ¶¶ 3-7.
[12] See [Dkt. 20] Answer, ¶ 11.
[13] See [Dkt. 23] Montoya Declaration, ¶12.
[14] Id. at ¶13.
[15] It should also be noted that Exhibits 7 and 8 do not appear on their face to be the business records of Defendant Rushmore, but rather, are apparently the records of Ditech. The Montoya Declaration fails to establish a foundation for these documents and is completely silent as to the issue of when or even if these documents were sent to Plaintiffs and the method that they were sent if at all. No tracking information is provided and no business record supports the mailing or delivery of the documents to Plaintiffs. The Montoya Declaration fails to state that the Rushmore business records that he reviewed included the records of prior loan servicers or that he has any personal knowledge of any such records. As to the propriety of Montoya's statements, the Court in *McDonald v. OneWest Bank, FSB*, 929 F. Supp. 2d 1079, 1090 (WD Wash. 2013) look askance on similar broad statements in a declaration where it was apparent that the declarant did little more that parrot information gained from other sources and not first hand knowledge.
[16] See [Dkt. 1] Complaint, Exhibit J.
[17] Id. Exhibit G.

PLAINTIFFS' RESPONSE IN
OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
Case No.: 3:18-cv-00884-RSM                     3

Cawood K. Bebout
1023 S. 3rd Street, Mount Vernon, WA 98273
(360) 419-3196

references a loan modification application received "on or around December 18, 2017" and goes on to describe how that application was incomplete. Yet, that application is not at issue in this case and therein lies the error. The issue presented by Plaintiffs' notice of error, Exhibit G to the Complaint, concerned the 2016 TPP offered by RCS, and the failure to send Plaintiffs a permanent modification related to that 2016 modification. This distinction is crucial and damns Defendants argument for judgment in their favor.

## II. STATEMENT OF ISSUES

Whether Defendants have established that there are genuine facts in dispute as to any material fact and that they are entitled to entry of judgment as a matter of law.

## III. EVIDENCE RELIED UPON

Plaintiffs rely upon the Complaint [Dkt. 1], including the exhibits attached with that pleading, the Defendants' answer [Dkt. 20], the Montoya Declaration [Dkt. 23] and the Declaration of Plaintiffs, to be filed contemporaneously with this response.

## IV. LEGAL AUTHORITY

### A. Standard of Review

Summary judgment is proper only if the pleadings, discovery and disclosure materials on file, and affidavits, if any, show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586

PLAINTIFFS' RESPONSE IN
OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
Case No.: 3:18-cv-00884-RSM                    4

Cawood K. Bebout
1023 S. 3rd Street, Mount Vernon, WA 98273
(360) 419-3196

(1986); *see also* Fed. R. Civ. P. 56(d). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987). The Court must draw all reasonable inferences in favor of the non-moving party. *See FDIC v. O'Melveny & Meyers*, 969 F.2d 744, 747, *rev'd on other grounds*, 512 U.S. 79 (1994). The court is required to resolve all disputed facts in favor of the non-moving party on summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

  **B.**  **Argument**

  **1.**  **Res Judicata Does Not Bar Plaintiffs' Claims**

Defendants ask the Court to take judicial notice of the proceedings in a case brought by Plaintiffs against Ocwen Loan Servicing and Bank of America in 2014.[18] The allegations and claims raised in that case have nothing to do with the servicing errors raised in this case against different loan servicers for entirely different conduct taking place many years apart. The issue in the 2014 case concerned a 2010 loan modification application, not the application and TPP at issue here. The RESPA claims at issue here are premised upon substantive rights under RESPA that first became available to consumers in January 2014. Those substantive rights simply did not exist in the prior case and it's inconceivable how that action can bar this action which is based upon different servicers, a different loan modification and different facts. The parties to that prior case resolved their dispute through settlement and the case was dismissed with prejudice.

---

[18] See [Dkt. 22] Request for Judicial Notice.

PLAINTIFFS' RESPONSE IN
OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
Case No.: 3:18-cv-00884-RSM    5

Cawood K. Bebout
1023 S. 3rd Street, Mount Vernon, WA 98273
(360) 419-3196

Federal courts "determine the preclusive effect of a state court judgment by applying that state's preclusion principles." *ReadyLink Healthcare, Inc. v. State Comp. Ins. Fund*, 754 F.3d 754, 760 (9th Cir. 2014) (citing 28 U.S.C. § 1738); *see also Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984) ("It is now settled that a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered."); *Ounyoung v. Fed. Home Loan Mortgage Corp.*, No. Civ. 12-00322 LEK, 2012 WL 5880673, at *4 (D. Haw. Nov. 21, 2012) (applying Hawaii law to evaluate preclusion of claims against Freddie Mac in the context of nonjudicial foreclosure).

Under Washington law, the threshold requirement for invoking *res judicata* is a final judgment on the merits. *Karlberg v. Otten*, 280 P.3d 1123, 1130 (Wash. Ct. App. 2012). The Supreme Court of Washington has explained that

> res judicata occurs when a prior judgment has a concurrence of identity in four respects with a subsequent action. There must be identity of (1) subject matter; (2) cause of action; (3) persons and parties; and (4) the quality of the persons for or against whom the claim is made.

*Schroeder v. Excelsior Mgmt. Grp., LLC*, 297 P.3d 677, 684 (Wash. 2013) (quoting *Mellor v. Chamberlin*, 673 P.2d 610 (Wash. 1983)) (quotation marks omitted). Each of these factors is absent here. The subject matter, aside from the fact that both cases concern the same property and loan is entirely different. The central issue in the first action was the servicing errors of Ocwen and not Bank of America. Neither is a party here. The causes of action are not the same. The first action asserted claims for breach of contract and breach of the covenant of good faith and fair dealing - the contract at issue being the 2010 modification application, not the TPP at issue here. Similarly, claims for negligence, wrongful foreclosure, outrage/intentional infliction

of emotional distress, unfair and deceptive acts, all related and are based upon conduct related to the 2010 loan modification and not the TPP at issue here. Notably, the servicer defendants are different. Here the servicers are RCS, Ditech and Rushmore. It is hard to comprehend how the claims brought against Rushmore here could in any way have been asserted in a case against entirely different servicer entities (not assignors, predecessors, or successors).

### 2. Defendants Are Liable to Plaintiffs for Breach of Contract for Failing to Abide by the Terms of the TPP and Failing to Send Plaintiffs a Permanent Modification

To assert a claim for breach of contract, a plaintiff must allege the existence of a valid contract, a breach of the contract, and damages. *See Meyers v. State*, 152 Wash. App. 823, 827-828 (2009). Here, Defendants were contractually obligated under the terms of the TPP to offer a permanent modification to the Plaintiffs who complied with the terms of the TPP and made the required trial payments. The Ninth Circuit has flatly rejected Defendants' argument to the contrary. In *Corvello v. Wells Fargo Bank, NA*, 728 F. 3d 878, 883 (9th Cir. 2013) *as amended on reh'g in part* (Sept. 23, 2013), the Ninth Circuit held that borrowers have a viable cause of action against a loan servicer if the servicer has "accepted and retained the payments demanded by" a trial period plan, "but neither offered a permanent modification or notified [the borrowers] they were not entitled to one, as required by the terms of the TPP." *Corvello*, 728 F.3d at 880[19]. "Where . . . borrowers allege . . . that they have fulfilled their obligations under the TPP, and the loan servicer has failed to offer a permanent modification, the borrowers have valid claims for breach of the TPP agreement." *Id*. at 884.

> The issue we must decide is whether the bank was contractually obligated under the terms of the TPP to offer a permanent modification to borrowers who

---

[19] Curiously, Defendants' Motion fails to cite and distinguish this controlling Ninth Circuit authority. In fact, Defendants' motion cites no authority for the argument advanced.

PLAINTIFFS' RESPONSE IN
OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
Case No.: 3:18-cv-00884-RSM                    7

Cawood K. Bebout
1023 S. 3rd Street, Mount Vernon, WA 98273
(360) 419-3196

> complied with the TPP by submitting accurate documentation and making trial payments. State and federal courts have dealt with similar issues, in similar factual circumstances, in a number of cases. *See Sutcliffe v. Wells Fargo Bank, N.A.*, 283 F.R.D. 533, 549-50 (N.D.Cal.2012) (collecting cases).
>
> The leading case on the contractual obligations of banks under TPP agreements is the Seventh Circuit's decision in *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547 (7th Cir. 2012). That court held that banks were required to offer permanent modifications to borrowers who completed their obligations under the TPPs, unless the banks timely notified those borrowers that they did not qualify for a HAMP modification. *Id.* at 562-63. Other courts have since followed the reasoning of *Wigod. See, e.g., Young v. Wells Fargo Bank, N.A.*, 717 F.3d 224, 233-34 (1st Cir.2013); *Sutcliffe*, 283 F.R.D. at 549-52; *West v. JPMorgan Chase Bank, N.A.*, 214 Cal. App.4th 780, 154 Cal.Rptr.3d 285, 299 (2013).
>
> \*\*\*
>
> We believe the reasoning in *Wigod* is sound. Paragraph 2G cannot convert a purported agreement setting forth clear obligations into a decision left to the unfettered discretion of the loan servicer. The more natural and fair interpretation of the TPP is that the servicer must send a signed Modification Agreement offering to modify the loan once borrowers meet their end of the bargain. Under Paragraph 2G of the TPP, there could be no actual mortgage modification until all the requirements were met, but the servicer could not unilaterally and without justification refuse to send the offer.

*Corvello*, 728 F.3d at 883-884. The TPP at issue here [20] contains the same provision at paragraph 2G and the HAMP directives in effect at the time of the TPP at issue dictate that a permanent loan modification be offered to borrowers following compliance and payment of a TPP.

> Following underwriting, NPV evaluation and a determination, based on verified income, that a borrower qualifies for HAMP Tier 1 or HAMP Tier 2, or following a determination that a borrower meets eligibility criteria under Streamline HAMP, servicers will place the borrower in a TPP.
>
> The trial period is three months in duration (or longer if necessary to comply with applicable contractual obligations) and governed by terms set forth in the TPP

---

[20] See [Dkt. 1] Exhibit C.

PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
Case No.: 3:18-cv-00884-RSM                    8

Cawood K. Bebout
1023 S. 3rd Street, Mount Vernon, WA 98273
(360) 419-3196

> Notice. Borrowers who make all trial period payments timely and who satisfy all other trial period requirements will be offered a permanent modification.

*Making Home Affordable Program Handbook for Services of Non-GSE Mortgages,* Version 5.0, Section 8.

### 3. Plaintiffs Have Established Claims Under Washington's CPA

The Washington Consumer Protection Act ("CPA") provides broadly that "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful." RCW § 19.86.020. To make a CPA claim, "a plaintiff must establish five distinct elements: (1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780, 719 P.2d 531, 533 (1986). "A per se unfair trade practice exists when a statute which has been declared by the Legislature to constitute an unfair or deceptive act in trade or commerce has been violated." *Id.* at 535. The CPA is to "be liberally construed that its beneficial purposes may be served." RCW 19.86.920.

**(a)     Unfair or Deceptive Act or Practice**

Here, Plaintiffs allege that Defendants acted in an unfair and deceptive manner when they collected Plaintiffs' TPP payments, failed to apply those payments to the TPP plan, failed to provide a contractually required permanent modification and then failed to investigate, respond or correct errors raised in a notice of errors as required by RESPA. Similar conduct has been found to meet the threshold requirement of an unfair or deceptive act. *Hunter v. Bank of Am., N.A.*, No. C16-1718 RAJ, 2019 U.S. Dist. LEXIS 38729, at *13 (W.D. Wash. Mar. 11, 2019) Moreover, the Court finds that Plaintiff has adequately plead violations of federal laws, which could serve as the basis for a CPA claim. For instance, Plaintiffs allege that Nationstar

PLAINTIFFS' RESPONSE IN
OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
Case No.: 3:18-cv-00884-RSM                    9

Cawood K. Bebout
1023 S. 3rd Street, Mount Vernon, WA 98273
(360) 419-3196

'did not review' their requests for loan modifications, in contravention to 12 C.F.R. 1024.41(c)(1)(i)'s requirement that loan servicers evaluate all such applications.")

### (b) Occurring in Trade or Commerce

Defendants' Motion does not dispute that the alleged conduct occurred in trade or commerce. Defendants concede that Rushmore acted as the servicer of a consumer mortgage loan on behalf of the owner of that loan - collecting Plaintiffs' payment, engaging in loss mitigation and in pursuing foreclosure to collect the loan.

### (c) Public Interest Impact

The question of whether particular actions give rise to a violation of the CPA is reviewable as a question of law. *Keyes v. Bollinger*, 31 Wash.App. 286, 640 P.2d 1077 (1982). Ordinarily a breach of a private contract affecting no one but the parties to the contract is not an act or practice affecting the public interest. *Hangman Ridge*, 719 P.2d at 538. However, a private dispute can affect the public interest if it is likely that additional plaintiffs have been or will be injured in exactly the same fashion. *Pacific Northwest Life. Ins. Co. v. Turnbull*, 51 Wash.App. 692, 754 P.2d 1262 (1988) (citing *Hangman).*

> In a private action in which an unfair or deceptive act or practice is alleged under RCW 19.86.020, a claimant may establish that the act or practice is injurious to the public interest because it:
>
> (1) Violates a statute that incorporates this chapter;
>
> (2) Violates a statute that contains a specific legislative declaration of public interest impact; or
>
> (3)(a) Injured other persons; (b) had the capacity to injure other persons; or (c) has the capacity to injure other persons.

RCW 19.86.093.

PLAINTIFFS' RESPONSE IN
OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
Case No.: 3:18-cv-00884-RSM                  10

Cawood K. Bebout
1023 S. 3rd Street, Mount Vernon, WA 98273
(360) 419-3196

Here, Defendants' conduct may impact the public interest because Rushmore is a loan servicer for hundreds of homeowners in the State of Washington and nationwide. Plaintiffs have alleged that Rushmore has engaged in a pattern and practice of mortgage servicing violations and has had 560 complaints filed against it with the Consumer Financial Protection Bureau.[21] Regarding a defendant's unfair or deceptive act, a claimant must show "a real and substantial potential for repetition, as opposed to the hypothetical possibility of an isolated unfair or deceptive act's being repeated." *Michael v. Mosquera-Lacy*, 165 Wn.2d 595, 604-05, 200 P.3d 695, 700 (2009) (quotation marks and citation omitted). To base a claim on deceptive action, a plaintiff "need not show the act in question was intended to deceive, only that it had the capacity to deceive a substantial portion of the public." *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 34, 204 P.3d 885, 887 (Wash. 2009). Although the Washington Supreme Court has not provided an explicit definition for "unfair acts," *Klem,* 295 P.3d at 1187, it has held that "an act is unfair if it . . . is unethical, oppressive, or unscrupulous." *Id.* at 1186. One federal interpretation, to which Washington courts interpreting the CPA may look for guidance, states that a "practice is unfair if it causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and is not outweighed by countervailing benefits." *Id. See also Collins v. Seterus, Inc.*, No. C17-0943-JCC, 2019 U.S. Dist. LEXIS 44932, at (W.D. Wash. Mar. 19, 2019).

**(d)   Injury to Plaintiff in Business or Property**

"The injury element will be met if the consumer's property interest or money is diminished because of the unlawful conduct even if the expenses caused by the statutory

---

[21] See Complaint [Dkt. 1], ¶48. The Court may take judicial notice of the publicly available data on the CFP database.

violation are minimal." *Mason v. Mort. Am., Inc.*, 792 P.2d 142, 148 (Wash. 1990). "The CPA's requirement that injury be to business or property excludes personal injury, `mental distress, embarrassment, and inconvenience.'" *Frias v. Asset Foreclosure Servs., Inc.*, 181 Wash. 2d 412, 431 (2014) (quoting *Panag*, 166 Wash.2d at 57). Financial consequences of these types of personal injuries are also excluded. *Id.* The CPA addresses "injuries" rather than "damages, and so quantifiable monetary loss is not required. *Id.* (citing *Panag,* 166 Wash.2d at 58). "The injury element can be met even where the injury alleged is both minimal and temporary." *Id.* As is relevant here, "[w]here a more favorable loan modification would have been granted but for bad faith in mediation, the borrower may have suffered an injury to property within the meaning of the CPA." *Frias v. Asset Foreclosure Servs., Inc.*, 181 Wash. 2d 412, 431-32, 334 P.3d 529, 538. (2014).

Plaintiffs have alleged injury. That injury is detailed in the complaint and the Plaintiffs' Declaration. The Motion offers no evidence to counter these facts. But for Defendants' conduct, the Plaintiffs would have accepted a permanent modification, the loan would not be in default, they would not be incurring late fees, inspection fees, attorneys' fees, nor have to expend time to remedy the error and defend a foreclosure case that should have now been resolved with a reinstated loan.

**(e)  Causation**

Under the causation element, a plaintiff must establish that, "but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury." *Babrauskas v. Paramount Equity Mortg.*, No. C13-0494RSL, 2013 WL 5743903, at *4 (W.D. Wash. Oct 23, 2013) (quoting *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 162 Wash. 2d 59, 84 (2007)). Here, Plaintiffs allege that they were denied a chance to modify their

PLAINTIFFS' RESPONSE IN
OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
Case No.: 3:18-cv-00884-RSM                12

Cawood K. Bebout
1023 S. 3rd Street, Mount Vernon, WA 98273
(360) 419-3196

mortgage loan because Ditech never sent them a permanent modification as contractually required and when they retained counsel to bring this error to the attention of their present loan servicer, that servicer failed to conduct a proper investigation - really, it did not even grasp the nature of the error being raised. Plaintiffs were denied the chance to obtain a reasonable loan modification *but for* the conduct of Rushmore in failing to offer a permanent loan modification as contractually required by the TPP and by failing to abide by RESPA, which resulted in this error not being properly and timely investigated and corrected.

### 4. Plaintiffs Have Established Claims Under RESPA

RESPA is a consumer protection statute that regulates the real estate settlement process, including servicing of loans and assignment of those loans. *See* 12 U.S.C. § 2601 (Congressional findings); *Catalan v. GMAC Mortg. Corp.*, 629 F.3d 676, 680 (7th Cir. 2011). RESPA was enacted to institute:

> significant reforms in the real estate settlement process. . . to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country.

12 U.S.C. § 2601(a).

RESPA applies to lenders who offer "federally related mortgage loans." *See* 12 U.S.C. § 2605. The Act imposes a number of duties on lenders and loan servicers. RESPA requires servicers to respond to a borrower's QWR in three ways. 12 U.S.C. § § 2605(e)(2)(A)-(C). First, a servicer can make corrections to the account (*Id.* at § (e)(2)(A)); second, a servicer, following an investigation, can explain or clarify why it believes the borrower's account is already correct (*Id.* at § (e)(2)(B)); or third, a servicer can, after an investigation, provide the borrower with a

PLAINTIFFS' RESPONSE IN
OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
Case No.: 3:18-cv-00884-RSM                13

Cawood K. Bebout
1023 S. 3rd Street, Mount Vernon, WA 98273
(360) 419-3196

written explanation that includes the information requested and explain why the information not provided cannot be obtained or provided by the servicer (*Id.* at § (e)(2)(C)).

RESPA does not distinguish between a RFI and a NOE—but Regulation X does. *See* 12 CFR § 1024.36 (procedures for information requests) and 12 CFR § 1024.35 (error resolution procedures). Section 1024.36 is analogous to 12 U.S.C. § 2605(e)(2)(C) and Section 1024.35 is analogous to § 2605(e)(2)(B). Here, Plaintiff sent Nationstar two request letters dated August 11, 2017: (1) a "Request for Information Pursuant to [§] 1024.36 of Regulation X" (*See* Dkt. #23, Ex. G at 15) and (2) a "Notice of Error under 12 CFR [§] 1024.35(b)(5)." *See Id.* at 17.

Here, Plaintiffs allege that Defendants violated RESPA because they did not respond to the substantive issues raised by the notice of error - that no permanent modification had been offered to plaintiffs by Ditech or any subsequent servicer following completion of the TPP payments. The response completely ignores this issue - as does the Motion - indicating that the issue was not investigated, no substantive response was given and the error alleged was not corrected.

RESPA provides that anyone who violates RESPA shall be liable for damages to an individual who brings an action under the section. *Allen v. United Fin. Mortg. Corp.,* 660 F. Supp. 2d 1089, 1097 (N.D. Cal. 2009); *see* 12 U.S.C. § 2605(f). "[A]lleging a breach of RESPA duties alone does not state a claim under RESPA. Plaintiff must, at a minimum, also allege that the breach resulted in actual damages." *Hutchinson v. Del. Sav. Bank FSB,* 410 F.Supp.2d 374, 383 (D.N.J. 2006).

### V.   CONCLUSION

Plaintiffs request that the Court enter an order denying the Motion and granting such other and further relief as may be deemed appropriate.

PLAINTIFFS' RESPONSE IN  
OPPOSITION TO DEFENDANTS'  
MOTION FOR SUMMARY JUDGMENT  
Case No.: 3:18-cv-00884-RSM                14

Cawood K. Bebout  
1023 S. 3rd Street, Mount Vernon, WA 98273  
(360) 419-3196

Respectfully submitted,

*/s/ Rusty Payton*
Rusty Payton, (IL Bar No.: 6201771)
DANNLAW
Rusty Payton (*Pro Hac Vice*)
20 N Clark St Ste 3300
Chicago IL 60602
Tel: (312) 702-1000
Fax: (216) 373-0536
payton@dannlaw.com

*/s/ Cawood K. Bebout*
Cawood K. Bebout, WSBA #34904
1023 S 3rd St
Mount Vernon WA 98273
Tel: (360) 419-3196
Fax: (360) 336-1962
bebout@fidalgo.net

*Attorneys for Plaintiffs*

PLAINTIFFS' RESPONSE IN
OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT
Case No.: 3:18-cv-00884-RSM                    15

Cawood K. Bebout
1023 S. 3rd Street, Mount Vernon, WA 98273
(360) 419-3196

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 4th day of April, 2019, I electronically filed the foregoing via electronic mail to the following: **PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** using the CM/ECF system, which will send notification of such to the following:

>Kimberly Hood and Peter J. Salmon
>Aldridge Pite, LLP
>9311 SE 36th St Ste100
>Mercer Island WA 98040
>(206) 232-2752
>khood@aldridgepite.com
>psalmon@aldridgepite.com

>*/s/ Cawood K. Bebout*
>Cawood K. Bebout, WSBA #34904
>1023 S 3rd St
>Mount Vernon WA 98273
>Tel: (360) 419-3196
>Fax: (360) 336 1962
>bebout@fidalgo.net