UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| KULWINDER MUTTI and KIRPAL MUTTI,<br><br>Plaintiffs,<br><br>v.<br><br>RUSHMORE LOAN MANAGEMENT SERVICES LLC, and WILMINGTON SAVINGS FUND SOCIETY, FSB, d/b/a Christiana Trust, not individually but as trustee for Pretium Mortgage Acquisition Trust,<br><br>Defendants. | CASE NO. C18-884RSM<br><br>ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

## I.  INTRODUCTION

This matter is before the Court on Defendants [sic] Motion for Summary Judgment. Dkt. #21. Plaintiffs have responded in opposition. Dkt. #25. Defendants forego a reply. Neither party requests oral argument and the Court does not find it necessary. Having reviewed the briefing and the record and for the following reasons, the Court denies Defendants' Motion.

//

//

//

ORDER – 1

## II. BACKGROUND

Plaintiffs, Kulwinder Mutti and Kirpal Mutti, borrowed $275,000 to purchase a home, securing the loan with a Deed of Trust. Dkt. #1 at ¶¶ 2, 4.[1] The loan has been sold several times and Defendant Wilmington Savings Fund Society ("Defendant Wilmington") is the current owner of the loan[2] and Defendant Rushmore Loan Management Services, LLC ("Defendant Rushmore") is the current servicer of the loan. *Id.* at ¶¶ 6–7.

Plaintiffs provide the relevant history in a declaration (Dkt. #25-1) filed with their opposition to Defendants' Motion:

> In 2015, we encountered financial difficulties and fell behind in the payments on the Loan. In order to save our Home and pay the Loan, we sought loss mitigation from the servicer of the Loan at that time, Residential Credit Solutions, Inc. ("RCS"). On or about December 21, 2015, RCS sent a Trial Period Plan (the "TPP") to us and a true and correct copy of the TTP is attached as Exhibit C to the complaint we filed. Pursuant to the TPP, we were required to make three (3) monthly payments each in the amount of $1,555.63 for the months of February 2016, March 2016 and April 2016. Pursuant to the terms of the TPP, upon our acceptance of the TPP and timely remittance of such payments, RCS was to calculate and offer us a permanent loan modification. We accepted the TPP and remitted the requisite three (3) payments in a timely manner pursuant to the terms of the TPP. Proof of our payments pursuant to the TPP is attached as Exhibit D to the complaint we have filed. Servicing of the Loan transferred from RCS to Ditech Financial, LLC ("Ditech") on or about February 22, 2016. While we continued to remit the TPP payments to RCS, RCS forwarded such payments to Ditech and Ditech received such payments in a timely manner. A copy of the transaction history of the Loan from Ditech evidencing such is attached as Exhibit E to our complaint. Rather than apply the payments in accordance with the TPP, however, Ditech applied those payments to the Loan rather than the effective TPP, and then claimed that the Loan was delinquent. A copy of a mortgage statement from Ditech evidencing such is attached as Exhibit F to our complaint. Ditech did not honor the TPP throughout its servicing of the Loan and transferred the Loan to Rushmore in a default status. Despite our complete compliance with and satisfaction of the terms of the TPP, neither RCS, nor any subsequent servicer,

---

[1] In Plaintiffs' supporting declaration, they declare that "[e]ach declarant has reviewed the factual allegations set forth in the complaint filed in this case [Dkt. #1] and each declares that each fact is true." Dkt. #25-1 at ¶ 2 (first modification by Court). The Court accordingly accepts the allegations of the complaint as true for the purposes of this Motion.

[2] Not individually, but as trustee for Pretium Mortgage Acquisition Trust.

ORDER – 2

including Rushmore, ever abided by the terms of the TPP and offered to us a permanent loan modification consistent with the terms of the TPP.

Dkt. #25-1 at ¶ 3.

When no permanent loan modification was provided,[3] Plaintiffs sent Defendant Rushmore a Notice of Error ("NOE")[4] detailing the mistakes they believed had occurred. Dkt. #1 at ¶¶ 33–34. Despite the notice, Defendant Rushmore did not provide a permanent loan modification and Plaintiffs do not believe that Defendant Rushmore adequately investigated the matter. Dkt. #25-1 at ¶ 7.

### III. DISCUSSION

**A. Legal Standard**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). Material facts are those which might affect the outcome of the suit under governing law. *Anderson*, 477 U.S. at 248. In ruling on summary judgment, a court does not weigh evidence to determine the truth of the matter, but "only determine[s] whether there is a genuine issue for trial." *Crane v. Conoco,*

---

[3] The parties dispute whether Plaintiffs were provided a permanent modification. Defendants assert that an agreement and a follow-up letter were sent to Plaintiffs. Dkt. #21 at 3. Defendants provide copies of the documents that were purportedly sent but provides no proof that the documents were actually mailed to Plaintiffs. *Neely v. St. Paul Fire and Marine Ins. Co.*, 584 F.2d 341, 343 (9th Cir. 1978) (evidence presented by moving party "and inferences therefrom, must be viewed in the light most favorable to the opposing party"). Regardless, Plaintiffs testify that neither of them received the documents and both testify that they had not seen the documents until Defendants filed copies in support of their Motion. Dkt. #25-1 at ¶¶ 5–6. The factual discrepancy is, of course, resolved in the favor of Plaintiffs.

[4] By federal regulation, a NOE is a "qualified written request that asserts an error relating to the servicing of a mortgage loan." 12 C.F.R. § 1024.35(a).

ORDER – 3

*Inc.*, 41 F.3d 547, 549 (9th Cir. 1994) (citing *Federal Deposit Ins. Corp. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992)).

On a motion for summary judgment, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255; *Sullivan v. U.S. Dep't of the Navy*, 365 F.3d 827, 832 (9th Cir. 2004). However, the non-moving party must present significant and probative evidence to support its claim or defense. *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "The mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-moving party]." *Anderson*, 477 U.S. at 251. Uncorroborated allegations and self-serving testimony will not create a genuine issue of material fact. *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002); *T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F. 2d 626, 630 (9th Cir. 1987). Rather, the non-moving party must make a "sufficient showing on [each] essential element of her case with respect to which she has the burden of proof" to survive summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

**B. Analysis**

Plaintiffs have brought claims for breach of contract, violation of the Washington Consumer Protection Act ("CPA"),[5] and violations of the Real Estate Settlement Procedures Act ("RESPA").[6] However, as an initial matter, Defendants assert that Plaintiffs' claims are barred by res judicata. The Court addresses each issue in turn.

---

[5] WASH. REV. CODE § 19.86.020.

[6] 12 U.S.C. §§ 2601–2617.

ORDER – 4

### 1. Res Judicata

Defendants first argue that Plaintiffs' claims are precluded because Plaintiffs previously asserted, in a state court action, claims arising from their mortgage against prior owners and servicers of the loan. Dkt. #21 at 6–7.[7] This state court action was dismissed on March 16, 2016, and Defendants argue that Plaintiffs may not "rely on any cause of action or *facts* prior to" that date. *Id.* at 6 (emphasis added). Defendants offer no authority supporting their baseless position.

As noted by Plaintiffs, the preclusive effect[8] of a state court action in a subsequent federal court action is determined by state law. 28 U.S.C. § 1738; Dkt. #25 at 6 (gathering cases). Washington provides preclusive effect to final judgments on the merits. *Pederson v. Potter*, 103 Wash. App. 62, 67–68, 11 P.3d 833, 835–36 (2000) (first considering whether confession of judgment was a final judgment on the merits for res judicata purposes); *Cunningham v. State*, 61 Wash. App. 562, 811 P.2d 225 (1991) (partial summary judgment in federal court "sufficiently firm to satisfy the requirements of collateral estoppel" in later state court action). Defendants rely on a stipulated order of dismissal in the context of a settlement. Dkt. #22-3 at 3. Defendants provide no authority for this being a final judgment which can be given preclusive effect under Washington law.

---

[7] Defendants have asked that the Court take judicial notice of the state court action, providing an internet printout of a Washington State Superior Court docket, a first amended complaint from that action, and a stipulated dismissal of that action. Dkt. #22 (providing documents related to *Mutti v. Ocwen Loan Servicing, LLC, et al.*, Case No, 14-2-07010-1 KNT (King Co. Superior Court)). Plaintiffs do not object. To the extent necessary, the Court takes judicial notice of these court records.

[8] The Court notes that Defendants muddle the concepts of res judicata and collateral estoppel. *Christensen v. Grant Cty. Hosp. Dist. No. 1*, 152 Wash.2d 299, 306, 96 P.3d 957, 961 (2004) ("Claim preclusion, also called res judicata, 'is intended to prevent relitigation of an entire cause of action and collateral estoppel is intended to prevent retrial of one or more of the crucial issues or determinative facts determined in previous litigation.'") (quoting *Luisi Truck Lines, Inc. v. Wash. Utils. & Transp. Comm'n,* 72 Wash.2d 887, 894, 435 P.2d 654 (1967)).

ORDER – 5

More troubling, to rely on res judicata, Washington law requires *the moving party* to prove identity of "(1) persons and parties; (2) cause of action; (3) subject matter; and (4) the quality of the persons for or against whom the claim is made." *Kuhlman v. Thomas*, 78 Wash. App. 115, 120, 897 P.2d 365, 368 (1995). Defendants flatly represent to the Court that "[e]ach of the criteria are met to satisfy the doctrine of Res Judicata." Dkt. #21 at 6. Plaintiffs—while incorrectly relying on the federal standard—recognize that res judicata requires identity of the parties. *Id.* Yet Defendants provide absolutely no legal or factual support showing that they should be considered "the same parties" that were involved in the prior state court action. Quite to the contrary, the documents that Defendants submitted give zero indication that Defendants were involved in any manner. *See*, Dkts. #22-1, #22-2, and #22-3.

The Court also is not persuaded by Defendants' other arguments. Without actually identifying the claims of the prior state court action,[9] Defendants argue that the causes of action and subject matter should encompass Plaintiffs' current claims. Dkt. #21 at 6–7. More egregiously, Defendants provide no support for their argument that Plaintiffs "were clearly aware of their claims" at the time they dismissed their state court case. *Id.* At the time of dismissal, Plaintiffs had accepted the TPP, but had no indication that the TPP would not lead to the loan modification that they were promised. *See* Dkt. #1 at p. 44 (third trial payment due 04/01/2016), p. 49 (final cashier's check dated March 28, 2016).

**2. Breach of Contract**

Defendants advance a one-page argument that the TPP did not create any enforceable obligations that sounds somewhat persuasive on its face. Dkt. #21 at 8. But Plaintiffs point the Court to Ninth Circuit precedent they indicate wholly resolves the issue. Dkt. #25 at 7 (citing

---

[9] *State, Dep't of Ecology v. Yakima Reservation Irr. Dist.*, 121 Wash.2d 257, 290, 850 P.2d 1306, 1324 (1993) (res judicata "does not bar litigation of claims which were not in fact adjudicated").

ORDER – 6

*Corvello v. Wells Fargo Bank, NA*, 728 F.3d 878 (9th Cir. 2013), *as amended on reh'g in part* (Sept. 23, 2013)). *Corvello* directly supports Plaintiffs' claims by concluding that when "borrowers allege . . . that they have fulfilled all of their obligations under the TPP, and the loan servicer has failed to offer a permanent modification, the borrowers have valid claims for breach of the TPP agreement." *Id.* at 884. Plaintiffs fully explain why this precedent is controlling in this case. Dkt. #25 at 7–9. Conversely, Defendants never mention the case in their Motion, elected not to reply to Plaintiffs' response, and never provided the Court any reason that *Corvello* is not controlling.[10] Defendants blindly assert that Plaintiffs "were actually offered a final loan modification, but they did not accept it." Dkt. #21 at 8. Defendants offer no evidence that such an offer was communicated to Plaintiffs. Conversely, Plaintiffs aver that the final loan modification and a letter—purportedly sent when Plaintiffs did not return an executed copy of the loan modification—were never sent to or received by them. Dkt. #25-1 at ¶¶ 4–6. At a minimum, genuine disputes of material fact remain. Accordingly, the Court has little problem determining that summary judgment on this claim is not appropriate.

### 3. Washington Consumer Protection Act

A CPA claim requires proof of five elements: "(1) unfair or deceptive act or practice; (2) occurring in trade or commerce; (3) public interest impact; (4) injury to plaintiff in his or her business or property; (5) causation." *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.*, 105 Wash.2d 778, 780, 719 P.2d 531, 533 (1986). "[A] claim under the Washington CPA may be predicated upon a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated

---

[10] Defendants do not, for instance, argue that a difference between Washington and California contract law demands a different result.

ORDER – 7

by statute but in violation of public interest." *Klem v. Washington Mut. Bank*, 176 Wash.2d 771, 786, 295 P.3d 1179, 1187 (2013).

Defendants' focus is whether Plaintiffs can demonstrate harm to the public interest.[11] Defendants argue that the mortgage is a private contract and that other consumers are unlikely to be affected by similar conduct. Dkt. #21 at 9. To determine public harm in this context, Washington courts look to "(1) whether the alleged acts were committed in the course of defendant's business; (2) whether the defendant advertised to the general public; (3) whether the defendant actively solicited the particular plaintiff, thereby indicating potential solicitation of others; and (4) whether the parties occupy positions of unequal bargaining power." *Id.* (citing *Hangman Ridge Training Stables, Inc.*, 719 P.2d at 538). Again, Defendants' argument is overly conclusory, stating simply that "there is no allegation related to [Plaintiffs'] modification, or responses drafted to their personal loan inquiries, that could possibly relate to the public." Dkt. #21 at 10.

Plaintiffs, on the other hand, argue that Washington law provides that "[a] private dispute can affect the public interest if it is likely that additional plaintiffs have been or will be injured in exactly the same fashion." *Pacific Northwest Life Ins. Co. v. Turnbull*, 51 Wash. App. 692, 703, 754 P.2d 1262, 1268 (1988) (citing *Hangman Ridge Training Stables, Inc.*, 719 P.2d at 538). "A plaintiff need not show that the act in question was *intended* to deceive, but that the alleged

---

[11] Defendants also make a conclusory argument that "the [Plaintiffs] fail to show any injury to business or property." Dkt. #21 at 9. But Defendants go no further and do not explain why there is not sufficient evidence of an injury to Plaintiffs' business or property. For their part, Plaintiffs testify to injures to their property. Dkt. #25-1 at ¶ 7. Broadly, Plaintiffs were not provided the loan modification that they believed would be available to them and had to incur expenses attempting to get Defendants to respond to their repeated inquiries. *See Frias v. Asset Foreclosure Servs., Inc.*, 181 Wash. 2d 412, 431–32, 334 P.3d 529, 538 (2014) (noting plaintiff was "denied the chance to obtain a reasonable loan modification because U.S. Bank refused to participate in mediation in good faith" and concluding loss of favorable loan modification was sufficient injury to property).

ORDER – 8

act has the *capacity* to deceive a substantial portion of the public." *Hangman Ridge Training Stables, Inc.*, 719 P.2d at 538 (citations omitted). The parties do not drill down to the specific conduct at issue, but the broad picture remains that Plaintiffs were promised a loan modification if they made specified payments, made the payments, and were not offered the promised loan modification. Moreover, and as explained below, Defendants also arguably violated RESPA by failing to respond to Plaintiffs' requests that they remedy the situation. Summary judgment is not appropriate.

### 4. Real Estate Settlement Procedures Act Claims

Plaintiffs' RESPA claims arise from and relate to a single letter that constitutes a NOE and that was sent to Defendant Rushmore by an attorney representing Plaintiffs. Dkt. #1 at ¶¶ 58–67. That letter alleged four servicing errors. *Id.* at pp. 61–83. One error was premised on the refusal to offer Plaintiffs a permanent loan modification after successful completion of the TPP under 12 C.F.R. § 1024.35(b)(11). *Id.* The other three were premised on claims that the three TPP payments were credited to the underlying loan instead of in satisfaction of the TPP, in violation of 12 C.F.R. § 1024.35(b)(2). *Id.*

Upon receiving Plaintiffs' NOE, Defendant Rushmore was required to (1) correct the alleged errors and notify Plaintiffs, (2) conduct an investigation and provide a written explanation satisfying certain requirements, or (3) conduct an investigation and provide a written explanation with the "information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer." 12 U.S.C. § 2605(e)(2). Here, Defendant Rushmore replied with an explanation of why it believed it had not committed error regarding a 2017 loan modification application that Plaintiffs had never completed. Dkt. #1 at pp. 93–97. But, as Plaintiffs point out, the 2017 loan modification application was not the subject

ORDER – 9

of Plaintiffs' NOE. While Defendant Rushmore may have conducted an adequate investigation of its records, its explanation was non-responsive to the issues raised in the NOE.

Defendant Rushmore further argues that the letter was not an inquiry that it was required to respond to because the letter did not relate to "servicing" of the loan and instead related to loan modification. *See*, Dkt. #21 at 11–12 (citing several cases in support). The Court is not convinced. By statute, "servicing" relates to receipt of "scheduled periodic payments from a borrower" and application of those payments to principle and interest in accordance with the applicable agreements. *See,* 12 U.S.C. § 2605. Plaintiffs' NOE specifically complains that: "Rather than apply the payments in accordance with the TPP, however, Ditech applied the remaining TPP payments under the terms of the Loan rather than the effective TPP and claimed that the loan was delinquent. . . . Ditech refused to honor the TPP through their servicing of the Loan." Dkt. #1 at p. 62. Plaintiffs further maintained that Defendant Rushmore's failure to correct the actions of the prior servicers was itself a servicing error. *Id.* at p. 63. At this stage, the Court is satisfied that there is a genuine dispute of material fact as to whether the NOE related to servicing.

Lastly, Plaintiffs' RESPA claims require that they demonstrate "actual damages" because of Defendants' actions. As noted and considered above, *supra* n.11, Plaintiffs have sufficiently satisfied their burden to survive summary judgment.

**C. Inadequate Briefing**

The Court notes that much of the briefing was inadequate. While Defendants have failed to meet their burden, Plaintiffs have also failed to demonstrate the strength of their own claims. Rather, the Court was often left with a record that was inadequate to assess Plaintiffs' claims. The Court found much of Defendants' briefing to be overly conclusory and is left with the

ORDER – 10

impression that Defendants filed the Motion to "check a box." This impression is heightened by Defendants' failure to file a reply advancing their position after Plaintiffs' response demonstrated serious issues with the merits of Defendants' arguments.

Viewed cynically, the Court could conclude that Defendants met the purpose of their filing merely by forcing Plaintiffs to expend time and resources in responding to the Motion. This raises the specter of Federal Rule of Civil Procedure 11 sanctions and is particularly true for Defendants' res judicata argument which appears wholly frivolous. The argument comes across as an initial theory that was roughly fashioned into a conclusory argument with principles harvested from unrelated briefing. The Court expects the parties to present principled, researched, and targeted briefing on issues that are reasonably in dispute. Defendants' unfortunate decision to not withdraw their Motion—or any portion of their Motion—correspondingly required the Court to waste time and resources addressing the Motion.

## IV. CONCLUSION

Having reviewed Defendants' Motion, the briefing, and the relevant record, the Court finds and ORDERS that Defendants [sic] Motion for Summary Judgment (Dkt. #21) is DENIED.

DATED this 2nd day of May, 2019.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE

ORDER – 11